AFFIRM; Opinion issued December 12, 2012



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-10-01611-CV

**LARRY WHITE AND VSC, LLC, Appellants**

**V.**

**MIKE HARRISON, Appellee**

On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 08-00073-L

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice FitzGerald

Appellee Mike Harrison sued appellants Larry White and VSC, LLC for breach of a commercial lease. The case was tried to the court, and the trial court signed a judgment in favor of Harrison—and jointly and severally against White and VSC—in the amount of $356,579.12, plus attorney's fees and interest. In nine issues, appellants challenge the trial court's (a) rejection of their affirmative defenses, (b) exclusion of a witness, (c) validation of the guaranty signed by White, and (d) inclusion of certain property taxes in the damages calculation. We affirm the trial court's judgment.

## BACKGROUND

VSC, as tenant, entered into a ten-year lease with Harrison, as landlord, in October 2003 (the "Lease"). White, who was VSC's manager, signed the Lease for VSC and, on the same day, signed a personal guaranty on his own behalf (the "Guaranty"). The leased premises was located on California Crossing in Dallas County, and VSC's business operated there until September 2004. Around that time, appellants requested permission from Harrison—as the Lease required—to assign the Lease to James Davis; permission was denied. Nevertheless, appellants "transitioned control" of the premises to Davis. For almost two years, Harrison accepted rent payments from Davis. But in the Fall of 2006, Davis's payments became untimely and incomplete. In a series of letters to White, Harrison and his attorney demanded payment from VSC; White did not respond to the letters.

In December 2006, Harrison instituted a forcible entry and detainer action against appellants, but the cause was never heard.[1] In the meantime, Davis and Harrison met, along with their respective attorneys, and entered into an agreement concerning back rent owed and forbearance on the FED (the "Davis Agreement").[2] Appellants were not participants in the Davis Agreement. Indeed, the Davis Agreement stated specifically that it was not creating a landlord-tenant relationship with Davis, that Davis possessed the property subject to the approval of VSC, and that the original Lease and Guaranty remained in full force and effect. Specifically, the Davis Agreement acknowledged the following:

> It is hereby acknowledged that nothing in this Agreement is intended to create a Landlord-Tenant relationship between HARRISON and DAVIS. The occupancy of the Premises by DAVIS to date is as a result of whatever understanding or agreement that may have existed between VSC, as Tenant, and DAVIS, to which understanding

---

[1] There was inclement weather the day the hearing was initially scheduled, and only White appeared. No hearing was scheduled thereafter.

[2] Harrison filed an agreed judgment in the FED suit after reaching agreement with Davis, the occupant of the leased premises.

or agreement HARRISON was not a party. The Lease between HARRISON, as Landlord, and VSC, as Tenant, as guaranteed by WHITE, is not intended to be affected by this Agreement and remains in full force and effect. The right of DAVIS to occupy the Premises of the Lease arises out of whatever understanding or agreement that may exist between VSC and DAVIS. Notwithstanding the fact that no Landlord-Tenant relationship exists between HARRISON and DAVIS, HARRISON agrees to continue to indulge the occupancy of DAVIS in the Premises of the Lease as long as all terms and conditions of the Lease are satisfied in a timely and proper manner. If the understanding or agreement between DAVIS and VSC should terminate and DAVIS should lose sufferance from VSC to occupy the Premises, the Lease will continue in full force and effect and HARRISON will continue to recognize VSC, as Tenant, and WHITE. as the Guarantor of the Tenant's obligations under the Lease.

Davis paid what he promised in the Davis Agreement, but he subsequently stopped paying rent again, and Harrison demanded payment from both Davis and VSC. Eventually, Davis left the premises; the parties disagree as to whether he voluntarily abandoned the property or Davis forced him to leave. Harrison paid property taxes on the leased premises from 2007 through 2009. He prepared the property to be re-leased, but he did not re-lease the premises until 2010.

Harrison sued VSC and White for unpaid rent and reimbursement for taxes paid and expenses on the property.[3] The trial court found in favor of Harrison. White and VSC have appealed.

## AFFIRMATIVE DEFENSES

A number of appellants' arguments in this Court are based on affirmative defenses. The trial court found that appellants had not produced credible evidence of each of these defenses.[4] As

---

[3] Harrison originally sued Davis too, but later non-suited him.

[4] The relevant findings state:

74.  Defendants did not produce credible evidence to support their asserted defense of repudiation.

75.  Defendants did not produce credible evidence to support their asserted defense of novation.

76.  Defendants did not produce credible evidence to support their asserted defense of modification.

77.  Defendants did not produce credible evidence to support their asserted defense of ratification.

78.  Defendants did not produce credible evidence to support their asserted defense of waiver.

(continued...)

—3—

defendants, appellants bore the burden of pleading and proving those affirmative defenses. *See Holland v. Lovelace*, 352 S.W.3d 777, 788 (Tex. App.—Dallas 2011, pet. denied). When parties attack the legal sufficiency of an adverse finding on an issue on which they had the burden of proof, they must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Accordingly, we will sustain the issue only if the contrary proposition is conclusively established. *Id.* When parties attack the factual sufficiency of an adverse finding on an issue on which they had the burden of proof, they must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We consider and weigh all of the evidence, and we will set aside a verdict on the issue only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* If a party offers no credible evidence on an issue where he bears the burden of proof, we must overrule his challenges to the sufficiency of the evidence supporting the verdict against him.

## Ratification

In their first issue, appellants contend that Harrison ratified Davis's "takeover" of the Lease. The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ) (citing *Jamail v. Thomas*, 481 S.W.2d 485, 490 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.)). A party ratifies an agreement when—after learning all of the material facts—he

---

[4](...continued)

> 79. Defendants did not produce credible evidence to support their asserted defense that Plaintiff failed to mitigate his damages.

confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated. *Avary v. Bank of America, N.A.*, 72 S.W.3d 779, 788 (Tex. App.—Dallas 2002, pet. denied).

Thus, to establish a ratification, appellants were required to prove that Harrison confirmed Davis as his new tenant, replacing VSC, under the Lease. The only evidence in the record, however, is to the contrary. The Davis Agreement stated that Harrison would allow Davis to occupy the premises, at VSC's "sufferance," because VSC remained the tenant under the Lease. The Davis Agreement specifically stated that Davis was *not* now the tenant and that VSC, as tenant, remained responsible under the Lease. Moreover, Harrison continued to look to VSC and its guarantor for rent pursuant to the Lease. The evidence establishes that Harrison rejected the possibility of Davis taking over the Lease from VSC; appellants offered no evidence supporting a ratification by Harrison.

We overrule appellants' first issue.

### Repudiation

In their second issue, appellants argue that Harrison repudiated the Lease by breaching the warranty of quiet enjoyment. A repudiation is accomplished by a contracting party's words or actions that indicate he is not going to perform his contract in the future. *Group Life & Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex. Civ. App.—Dallas 1981, no writ). A repudiation is "conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract." *Id.* Appellants contend that by accepting rent from Davis, and allowing him to conduct business on the leased premises, Harrison expressed his "fixed intention" not to perform his contractual obligations under the Lease.

The contractual obligation that appellants contend Harrison was refusing to perform was his warranty of their quiet enjoyment of the premises. In the Lease, Harrison warranted as follows:

> Landlord warrants that it has full right and power to execute and perform this lease and to grant the estate demised herein and that Tenant, on payment of rent and performing the covenants herein contained. shall peaceably and quietly have, hold and enjoy the demised premises during the full term of this lease.

Appellants argue Harrison deprived them of the use of the premises, but the evidence is to the contrary. Appellants left the premises and "transitioned" the property to Davis. But Harrison specifically acknowledged in the Davis Agreement that Davis possessed the premises only at the pleasure of VSC. We find no evidence in the record that appellants ever attempted to re-enter and use the premises and that Harrison prevented them from doing so. Having turned over the premises to Davis, and never attempting to re-enter, appellants could offer no evidence of any claim related to enjoyment of the premises.

We overrule appellant's second issue.

## Waiver

In their fifth issue, appellants contend that Harrison waived his rights against defendants by his inconsistent conduct. Specifically, they allege that Harrison "indicated—expressly and through his conduct—that he did not intend to claim the right to enforce" the Lease and Guaranty. The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

When arguing waiver, appellants refer to a phone call White made to Harrison during the negotiation of the Davis Agreement. White testified he spoke to both Harrison and his attorney and that the attorney told White that he was "off the hook" for the Lease because of the agreement he was negotiating with Davis. Appellants rely on reports of this conversation for a number of their arguments. But White conceded at trial that there was no writing memorializing this purported

change in appellants' obligations. And as we have explained, the Davis Agreement makes clear that there was no new lease between Harrison and Davis and that appellants remained liable on the Lease. Furthermore, Harrison's action were consistent with the acknowledgments in the Davis Agreement. Harrison consistently sent rent demands to appellants, regardless of who was occupying the premises, whenever rent was overdue. In each correspondence, Harrison indicated he intended to hold appellants to their obligations under the Lease. Given the overwhelming evidence that Harrison did not intend to let appellants "off the hook," the trial court could reasonably have disbelieved White's testimony concerning the purported oral release from Harrison's attorney. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005). We may not impose our own credibility opinion to the contrary. *Id.* at 819.

Appellants also argue that by "excluding" them from that Davis Agreement and the resolution of the FED suit, Harrison was indicating he did not intend to hold them to the Lease. But the FED settlement resolved only Davis's possession of the premises, which was subject to appellants' continued approval and to his complying with the financial obligations he (Davis) took on in the Davis Agreement. Given that appellants were no longer in possession of the premises, the eviction procedure did not speak to their Lease rights at that point in time.

We discern nothing inconsistent in Harrison's words and actions concerning appellants' obligations under the Lease. Harrison could accept rent from a party occupying the premises with his tenant's approval. But Harrison consistently emphasized that he would ultimately look to appellants on the Lease and Guaranty. Deferring as we must to the trial court's credibility decisions, we discern no evidence supporting a finding of waiver.

We overrule appellants' fifth issue.

*Modification*

In their seventh issue, appellants contend the Lease was modified when Harrison, White, and Davis created a "new lease" for the same property, and the trial court's finding to the contrary was error. Again, modification of a contract is an affirmative defense that appellants had the burden to prove. *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007, no pet.). A valid contract modification must include a meeting of the minds supported by consideration. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 701–02 (Tex. App.—Dallas 2008, no pet.). And importantly, "an oral modification of a written contract is enforceable under the Statute of Frauds only if the modification does not materially alter the obligations imposed by the underlying agreement." *Vendig v. Traylor*, 604 S.W.2d 424, 427 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *see also Dracopoulas v. Rachal*, 411 S.W.2d 719, 722 (Tex. 1967); *Walker v. Tafralian*, 107 S.W.3d 665, 670 (Tex. App.—Fort Worth 2003, pet. denied).

In their modification argument, appellants rely again on the purported oral release and their exclusion from the FED settlement to say the parties agreed to modify the Lease. The evidence the trial court found credible does not support the existence of a modification in this case. First, the Lease states unequivocally that it "may be amended only by an instrument in writing." Moreover, it is beyond dispute that the modification for which appellants argue would materially alter their obligations under the Lease, and thus was required to be in writing. *See Vendig*, 604 S.W.2d at 427. But there is absolutely no evidence in the record of an amended or modified lease—or any other written agreement other than the Lease and the Guaranty—between appellants and Harrison. The Davis Agreement cannot be a "new lease," as appellants claim, when its own terms say it is not creating a landlord-tenant relationship. And the Davis Agreement cannot be read to alter the Lease, when it states: "The Lease between HARRISON, as Landlord, and VSC, as Tenant, as guaranteed

by WHITE, is not intended to be affected by this Agreement and remains in full force and effect."

To accomplish a modification of the Lease, there had to be a meeting of the minds between the parties to the Lease and a writing reflecting their new agreement. Appellants offered no evidence of either requirement.

We overrule appellants' seventh issue.

## Novation

In their eighth issue, appellants argue that Harrison, Davis, and VSC established a novation of the Lease, absolving VSC and White from their obligations under the Lease. A novation—another affirmative defense—substitutes a new obligation for an existing obligation or a new contracting party for an existing party. *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). A novation requires a mutual agreement to make the substitution; a novation is never presumed. *Id.* We have concluded that there is no evidence Harrison intended to create a new lease when he entered into the Davis Agreement. On the contrary, that agreement expressly states that it does not create a landlord-tenant relationship between Harrison and Davis, and it expressly affirms that the Lease between Harrison and VSC remains in full force and effect. Appellants' novation argument is without merit.

We overrule appellants' eighth issue.

## Failure to Mitigate Damages

In their fourth issue, appellants contend that Harrison failed to exercise reasonable care in mitigating his damages. In *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997), the Supreme Court of Texas recognized that a commercial landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property. The rule in *Palisades Plaza* has since been codified: "A landlord has a duty to mitigate

damages if a tenant abandons the leased premises in violation of the lease." Tex. Prop. Code Ann. § 91.006(a) (West 2007).[5] The landlord's duty to mitigate requires him to use "objectively reasonable efforts" to re-lease the premises to a tenant "suitable under the circumstances." *Palisades Plaza*, 948 S.W.2d at 299. If the landlord fails to use reasonable efforts to mitigate damages, his recovery from the tenant is barred to the extent that damages reasonably could have been avoided. *Id.* The reasonableness of the landlord's efforts to avoid damages is an issue for the fact finder. *See Hunsucker v. Omega Indus.*, 659 S.W.2d 692, 698 (Tex. App.—Dallas 1983, no writ) ("issues such as reasonableness and foreseeability are inherently issues for a jury"). The tenant bears the burden of proof to demonstrate that the landlord has failed to mitigate damages and the amount by which the landlord could have reduced his damages. *Palisades Plaza*, 948 S.W.2d at 299.

Appellants contend Harrison could have avoided all of his damages had he allowed Davis to remain on the property. Davis testified he was forced off the property by Harrison sometime in December 2007. Davis also testified he was current on his rent through November and that he tried to pay his December rent, but Harrison refused to accept it. According to Davis, he would have remained on the property through the entire term of the Lease and would have continued paying rent if Harrison would have accepted his payments. But Harrison's testimony contradicted Davis's assertions: Harrison stated that he never refused to accept rent payments from Davis. In fact, the record establishes that on December 11, 2007, Harrison demanded payment of the overdue December rent from both Davis and White. Neither man responded to the demand. It is the province of the fact finder to resolve conflicts in the evidence and to make determinations of credibility. *City of Keller*, 168 S.W.3d at 820. We conclude ample evidence supports the trial court's rejection of

---

[5] In *Palisades Plaza*, the Supreme Court said the rule applied "unless the commercial landlord and tenant contract otherwise." *Palisades Plaza*, 948 S.W.2d at 299. The Legislature eliminated the possibility of contracting around the duty to mitigate, stating: "A provision of a lease that purports to waive a right or to exempt a landlord from a liability or duty under this section is void." Tex. Prop. Code Ann. § 91.006(b).

the contention that all of Harrison's damages could have been avoided by allowing Davis to remain on the premises.

Appellants argue that Davis paid $197,000 on improvements to the property that appellants should have been credited. Davis did testify he spent about that much on gravel for the property, but he also conceded that Harrison had no obligation to reimburse him for that expense.

Appellants contend Harrison should have protested tax amounts and hired an appraiser to determine the value of the property. Appellants offered no evidence that these efforts would have avoided damages to Harrison. Indeed, Harrison testified that he believed the property was undervalued on the tax rolls and that protests or appraisals could "backfire" on him, actually costing rather than saving him money.

Finally, appellants complain that Harrison hauled away vehicles and boat hulls that had been abandoned on the premises. Appellants contend Harrison should have attempted to auction them, sell them for parts or salvage, or contact their owners to collect storage fees. Appellants have not identified any legal authority that requires a landlord, after a tenant abandons the leased premises, to carry on the tenant's business or to proceed in any particular fashion with the tenant's abandoned inventory. A landlord's duty under those circumstances is to use objectively reasonable efforts to re-lease the premises to a suitable tenant. *Palisades Plaza*, 948 S.W.2d at 299. The record indicates Harrison complied with this duty. He prepared the property for a new tenant, placed signs advertising the availability of the property, and he posted the property in the appropriate multiple listing service and with online services. He accepted a temporary lease and credited appellants for the $20,000 received from that venture. And he ultimately re-leased the property in May 2010, four years before the Lease would have expired. We conclude appellants did not establish that Harrison failed to mitigate his damages.

We overrule appellants' fourth issue.

## EXCLUDED WITNESS

In their sixth issue, appellants contend the trial court erred in excluding Eloy Jones from serving as a "rebuttal witness" at trial. Appellants called Jones during their case-in-chief, but they had not disclosed him as a witness in discovery. Harrison objected, and the trial court excluded Jones. The rules of civil procedure govern a party's failure to disclose a witness before trial:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not . . . offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> >
> > (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). The burden of establishing good cause (or the lack of unfair surprise or unfair prejudice) is on the party calling the witness, and a finding of good cause (or of the lack of unfair surprise or unfair prejudice) must be supported by the record. TEX. R. CIV. P. 193.6(b). We review the trial court's exclusion of a witness on nondisclosure grounds for an abuse of discretion. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

Appellants contend that Eloy Jones would have testified that Harrison "did forcibly remove Davis from the premises while under the influence of alcohol." They say they could not have expected Harrison to lie about that, so there was good cause to allow Jones's undisclosed "rebuttal" testimony. The record includes appellants' bill containing Jones's actual testimony. That bill states in its entirety:

Q. Mr. Jones, do you know this gentleman over here to my right?

A. Yes, sir.

Q. And what's his name?

A. I don't know his name, but I know his face.

Q. You know his face. Where do you know him from?

A. Because he's the owner of VSC.

Q. And when you worked over at California Crossing?

A. Yes, sir.

Q. Did you ever see him come to the yard?

A. Yes, sir.

Q. Was he drunk when he showed up there?

A. Once -- one time, to be drunk one time.

Q. Okay. Did you ever see him come over there and order employees of the company you worked for out of the yard?

A. Yes, sir.

Q. And what did he tell them to do?

A. He just told us to get out of the yard. You know, he got a gun -- as a matter of fact, one time he got a gun, told us to get out of the yard with a gun. I left, you know, because I didn't want to get shot, you know.

Q. Did he threaten to shoot anyone?

A. Yeah, because he told everybody get out of the yard. I'm going to shoot everybody. Everybody left, you know. I put -- parked car outside the yard, you know, outside the gate.

This proposed testimony, contrary to appellants' assertions, makes no reference to Davis at all. It states that Jones worked at California Crossing, but it does not say when. And although appellants aver this testimony would be harmful to Harrison, Jones identifies the man in his recollection as the president of VSC. But even if the subject of Jones's testimony was Harrison, and the events he

recites involved Davis's eviction, the question of whether Harrison had a gun or had been drinking is not central to either side's case. There is no claim of wrongful eviction here.

Counsel for appellants stated at trial that he had only learned who Jones was that day. But he gave no explanation why he could not have identified Jones as a witness in a timely fashion. This record does not include a showing of good cause to admit the undisclosed testimony of Jones.

We overrule appellants' sixth issue.

## WHITE'S LIABILITY AS GUARANTOR

In their third issue, appellants contend the trial court erroneously denied White's motion for directed verdict because Harrison failed to prove that White's Guaranty relates to the Lease at issue in this case. The basis of appellants' argument is that the address of the premises at issue on the Guaranty (2000 California Crossing) is different from the address on the Lease (2160 California Crossing). Thus, appellants argue, White is not liable as a guarantor of this Lease. Harrison responds that appellants "never asserted by verified pleadings any denial of liability in the capacity as guarantor" of the Lease.

We agree with Harrison. White did not comply with rule 93, which states:

> A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.
> . . .
> 2. That . . . the defendant is not liable in the capacity in which he is sued.

TEX. R. CIV. P. 93(2). Texas law requires a verified plea to be filed anytime the record does not affirmatively demonstrate the defendant's right to be sued in the capacity in which the plaintiff has sued him. *See Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) ("The rule means just what it says."). Here, White claims not to be liable as guarantor of the Lease. Because he failed to raise this defense through a verified denial—as rule 93(2) and caselaw require—there is no issue for us

–14–

to review. *See Wimmer v. Hanna Prime, Inc.*, 05-08-01323-CV, 2009 WL 3838867, at *2 (Tex. App.—Dallas Nov. 18, 2009, no pet.) ("Because Wimmer failed to verify his plea in accordance with rule 93, he did not raise a material issue of fact as to whether he personally guaranteed the debt.") (memo op.).

Even if we addressed the substance of this issue—a challenge to the trial court's ruling on White's motion for directed verdict—appellants' argument would fail nonetheless. An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Solares v. Solares*, 232 S.W.3d 873, 878 (Tex. App.—Dallas 2007, no pet.). Thus, White is contending there was no evidence supporting his liability for the Lease under the Guaranty. We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller*, 168 S.W.3d at 807.

White testified he signed the Lease on behalf of tenant VSC and, on the same day, he signed the Guaranty "as a personal guarantor." The Guaranty's first paragraph reads:

> In order to induce MIKE HARRISON ("Landlord") to execute the forgoing Net Commercial Lease Agreement (the "Lease") with VSC, LLC, a Nevada LLC ("Tenant"), for a certain Demised Premises at 2000 California Crossing, City of Dallas being a 10.47 acre tract of land in the ELI MERRELL SURVEY, ABSTRACT No. 978, CITY BLOCK 6488, the City of Dallas, Dallas County, Texas, . . . .

As this first paragraph establishes, the Guaranty was an inducement for Harrison to enter into "the forgoing Net Commercial Lease Agreement" with VSC. In this case, the Guaranty is not merely attached to the Lease; it forms the last page of the Lease. Thus, not only does the language of the Guaranty reference the Lease signed by White, the very structure of the two documents supports the relationship between them.

Likewise the legal description of the leased premises supports the relationship between the documents. The Lease describes the leased premises as:

> Being a 10.47 acre tract of land in the Eli Merrell Survey, Abstract No. 978, CITY BLOCK 6488, the City of Dallas, Dallas County, Texas.

This description mirrors the one quoted above from the Guaranty. Both documents unambiguously encompass the entire 10.47 acre tract, not some portion or division thereof. As a rule, because a lease is a grant of realty that must essentially meet the same requirements as a deed, the legal description of a property will control over a common description or street address. *See Nat'l Convenience Stores, Inc. v. Martinez*, 784 S.W.2d 468, 471 (Tex. App.—Texarkana 1989, writ denied).

When construing a written contract such as this Guaranty, our primary concern is to ascertain the true intentions of the parties. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To do so we review the entire agreement, and we supply terms that were "obviously intended." *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.3d 666, 670 (Tex. App.—Dallas 2008, no pet.). "Written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions." *Id.* (quoting *Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank—Farmers Branch*, 783 S.W.2d 598, 600 (Tex. App.—Dallas 1989, no writ)). In *Hasty v. Keller*, this Court concluded that an error in the name of the landlord did not create a fact issue on the guarantor's obligation when the parties' intent was clear from the documents. 260 S.W.3d at 670. We conclude the reference to different street addresses in the Lease and Guaranty is an obvious mistake and that the documents evidence a clear intent that White be the personal guarantor of VSC's obligations under the Lease.

Appellants rely on *Marshall v. Ford Motor Co.*, 878 S.W.2d 629 (Tex. App.—Dallas 1994, no pet.). In that case, the Marshalls guaranteed payment for sales by Ford Marketing Corporation

to Jomar Parts Warehouse, Inc. *Id.* at 630. The agreement was signed sometime in 1973; the opinion does not relate the precise date. At the end of the following year, on December 31, 1974, Ford Marketing Corporation was merged into Ford Motor Company. *Id.* Jomar and Ford Motor Company continued to do business, and in 1990 Jomar's account became delinquent. Although those parties attempted to work out the issue, Ford Motor Company eventually sued Jomar and the Marshalls on the debt. *Id.* The trial court concluded the Marshalls were liable under the guaranty, but this Court disagreed. We concluded the terms of the guaranty unambiguously guaranteed Jomar's payments for sales made by Ford Marketing Corporation, and none of the debt at issue proceeded from sales by Ford Marketing Corporation. *Id.* at 631–32. As we said in that case, "Once the terms of a guaranty are ascertained, the guarantor is entitled to have his agreement strictly construed and it may not be extended by construction or implication beyond the precise terms of his contract." *Id.* at 631.

*Marshall* is clearly distinguishable from White's case. The Marshalls guaranteed a named, existing entity: Ford Marketing Corporation. For more than a year, the guaranty could have been enforced had Jomar defaulted on payments to that entity. However, when Ford Marketing Corporation ceased to exist, the guaranty could not be enforced against a different entity. In White's case, he effectively argues his signature on the Guaranty was meaningless when he signed it: White's Guaranty could never have been enforced against him, because there is no lease between Harrison and VSC for property located at 2000 California Crossing. We reject this construction of the Guaranty. We cannot infer that a Guaranty that expressly says it was intended to induce Harrison to enter into the Lease was never intended to apply to the Lease.

We conclude the trial court correctly denied White's motion for directed verdict. We overrule appellants' third issue.

## RECOVERY OF TAXES PAID

In their ninth issue, appellants' contend there was no evidence that the taxes paid by Harrison for the years 2007, 2008, and 2009 were related to the leased premises. Because Harrison had the burden to prove his damages, we review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller*, 168 S.W.3d at 807. Appellants' argument is again related to street addresses assigned to the property in question. Our review of the record establishes that Harrison produced two tax statements for each of the three tax years at issue. Each year, one statement was for a property identified as 2000 California Crossing and one statement was for a property at 2158 California Crossing. All of the statements refer to block 6488, the same block referenced in the legal descriptions of the Lease and the Guaranty. The statements also give the amount of acreage for the property at each address. The acreage on the two statements combined is 10.47 acres, the same acreage referenced in the Lease and the Guaranty. Harrison identified the statements as the ones covering the leased premises. Appellants did not offer evidence of the taxes they paid in earlier years that might have been contrary to Harrison's evidence. We conclude a rational fact finder could certainly have concluded the statements were the proper ones for the leased premises. *See id.*

We overrule appellants' ninth issue as well.

## CONCLUSION

We have decided all of appellants' issues against them. We affirm the trial court's judgment.

KERRY P. FITZGERALD
JUSTICE

101611F.P05

–18–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

LARRY WHITE AND VSC, LLC,
Appellants

No. 05-10-01611-CV        V.

MIKE HARRISON, Appellee

Appeal from the 193rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
08-00073-L).
Opinion delivered by Justice FitzGerald,
Justices O'Neill and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellee Mike Harrison recover his costs of this appeal
from appellants Larry White and VSC, LLC.

Judgment entered December 12, 2012.

KERRY P. FITZGERALD
JUSTICE