**Affirmed and Memorandum Opinion filed April 4, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00724-CV

---

### REM SERVICES, INC. AND RISE J. MONTRELL, Appellants

### V.

### DR. AMER ZAHEER, Appellee

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 981203**

---

## MEMORANDUM OPINION

This is a dispute between a landlord, tenant, and guarantor. In two issues, we must determine whether the landlord is entitled to summary judgment on his claim for breach of contract. The tenant and guarantor challenge the landlord's summary judgment proof, the trial court's rejection of their claimed issues of fact, and other matters relating to their asserted affirmative defenses. Finding no error, we affirm the judgment of the trial court.

## BACKGROUND

REM Services, Inc., the tenant in this case, executed a residential lease agreement with the landlord, Dr. Amer Zaheer. The lease contemplated that Rise J. Montrell, the president of REM, would reside at the property along with two members of her family. Montrell signed the lease in her capacity as REM's president. Before the term of the lease began, Montrell also signed a guaranty agreement in her individual capacity, promising to pay any liabilities that might arise from REM's obligations under the lease.

The lease provided for a term of two and a half years, commencing in July 2008 and ending on New Year's Day 2011. On August 17, 2010, Montrell's niece notified Zaheer of a problem with the front door, saying that it would not open and that the knobs were extremely loose. Zaheer tried to arrange for his contractor to inspect the problem, but Montrell objected to his proposed weekend inspection. On August 21, before the contractor could arrive, Montrell informed Zaheer that she intended to vacate the premises at the end of the month. In her email to Zaheer, Montrell claimed that she could no longer live at the property because the house was not safe, and the broken door was a fire hazard. Her decision to surrender the property coincided with the purchase of another home.

Zaheer filed suit against REM and Montrell for breach of contract. He sought accelerated rents for the four months remaining on the lease, the costs of repairs beyond normal wear and tear, plus reasonable and necessary attorney's fees. In their answer, appellants claimed that they had lawfully terminated the lease because there were conditions in the home materially affecting their safety and security. Multiple other defenses were asserted, as was a counterclaim for the wrongful withholding of their security deposit.

2

Both sides moved for summary judgment. On January 13, 2012, the trial court denied appellants' motion in its entirety and granted a partial summary judgment in favor of Zaheer. In this judgment, the court awarded Zaheer $24,000 in damages, representing the four months of accelerated rents on his breach of contract claim. The court denied relief on Zaheer's other claim for repairs and ordered that claim to proceed to trial, where evidence of attorney's fees would also be considered.

Despite the limited issues that remained in the case, appellants filed more than a hundred proposed jury questions. In the interest of judicial economy, Zaheer nonsuited his claim for repairs and moved for summary judgment on the issues of attorney's fees and appellants' counterclaim. On April 27, 2012, the trial court granted Zaheer a final summary judgment. This appeal ensued. In two issues, appellants challenge the trial court's granting of Zaheer's motion for summary judgment and the denial of their own motion for summary judgment.

## STANDARD OF REVIEW

Our review of the trial court's summary judgment is de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). With a traditional motion for summary judgment, the movant bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant

conclusively establishes each element of his cause of action or affirmative defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). When both parties move for summary judgment and the trial court grants one motion but denies the other, we review the evidence produced by each party, determine de novo all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

## ZAHEER'S MOTION

We begin with Zaheer's motion for summary judgment, which sought relief for breach of contract. To recover on that claim, Zaheer was required to establish each of the following elements: the existence of a valid contract; his performance or tendered performance; appellants' breach of the contract; and damages sustained as a result of their breach. *See Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Zaheer alleged two breaches in this case. He argued first that REM breached the lease when it vacated the property and failed to pay the rents due on the remaining months of the term. He next argued that Montrell breached the guaranty agreement when she failed to deliver the payments due when REM defaulted.

Appellants argue that the summary judgment proof is insufficient because Zaheer relied solely on his pleadings. Appellants have grossly mischaracterized the record. Zaheer attached numerous exhibits to his motion, including the lease and guaranty agreement. Both contracts were drafted by the Texas Association of Realtors, and each clearly describes the duties belonging to REM and Montrell.

Appellants further claim that the guaranty agreement cannot be considered because it was not expressly part of the lease and because it fails for lack of consideration. These arguments are not persuasive. Under the plain terms of the

4

contract, Montrell agreed to guarantee the performance of REM "[i]n consideration for Landlord leasing the Property to Tenant." Such agreements are enforceable in Texas even if they post-date the underlying obligation. *See First Commerce Bank v. Palmer*, 226 S.W.3d 396, 398 (Tex. 2007).

Zaheer's exhibits include two letters sent to appellants on September 15, 2010 and October 1, 2010. The letters notify REM that it has surrendered the property and that it has defaulted under the lease. The letters further notify REM that all unpaid rents for the remaining term have been accelerated and that Montrell is personally liable for payment. Zaheer attested to the same facts in his affidavit, specifically stating that appellants owe a total of $24,000 in rents for the months of September through December 2010.

Appellants summarily contend that these exhibits do not present competent summary judgment evidence. Their argument is conclusory, however, having no explanations or citations to authority. We conclude that this issue is waived. *See* Tex. R. App. P. 38.1(i). Furthermore, we note that appellants have not presented any evidence to controvert Zaheer's assertions. Appellants freely admit that they vacated the premises in August 2010 and that no rents were paid thereafter. The record conclusively establishes that REM was in breach of the lease and that Montrell was in breach of the guaranty agreement. Accordingly, Zaheer was entitled to summary judgment unless appellants somehow negated his claim with an affirmative defense.

## APPELLANTS' MOTION

Appellants asserted a number of affirmative defenses, but their pleadings are not a model of clarity. Many defenses appear to overlap in the briefing, and the arguments are often repetitive. From what we can discern, appellants have organized their defenses around the following broad issues: (1) appellants

"surrendered" the property under the terms of the lease, and Zaheer cannot show that they "abandoned" it; (2) Zaheer failed to mitigate his damages; and (3) appellants unilaterally terminated the lease under Chapter 92 of the Texas Property Code. We examine these issues in turn. Finally, we conclude with a discussion of appellants' counterclaim.

## A.    Abandonment and Surrender

Appellants argue the following with respect to their first defense: "<u>Zaheer failed to perform all conditions precedent</u> to a claim that REM and Montrell 'abandoned' the property, but <u>REM and Montrell did perform all conditions precedent</u> to their claim that they properly 'surrendered' the property to Zaheer" (emphasis appellants').

"Abandonment" and "surrender" are defined terms under the lease. The lease states that the tenant must surrender the property at the end of the lease term, and a "surrender" occurs when the move-out or termination date has passed and the tenant has returned all keys and access devices to the landlord. The lease further provides, "Tenant may not abandon the Property." An abandonment occurs when all occupants have vacated the property; the tenant has breached the lease by failing to pay the rent; and the landlord has delivered written notice to the tenant, by affixation to the main door, stating that the landlord considers the property abandoned, and the tenant fails to respond to the affixed notice.

Appellants appear to argue that they properly surrendered the property because they notified Zaheer of their intent to vacate the premises early, they vacated by their noticed date, and they left the keys in Zaheer's possession. Appellants seem to argue next that there was no abandonment because, although they did vacate before the lease term expired, "Zaheer never posted a notice of abandonment regarding the property."

These arguments are meritless. Voluntarily surrendering the property does not obviate a breach under the lease. The duty to pay rent remains even if the tenant chooses to leave. Furthermore, Zaheer's claim for breach of contract does not depend on proof that he affixed notice of abandonment to the door of his property. It was enough to show that appellants vacated the premises without paying when several months remained on the term—and this much was undisputed. Accordingly, these defenses would not preclude summary judgment.

## B.    Failure to Mitigate

Appellants argue next that Zaheer failed to mitigate his damages. A landlord has a duty to mitigate his damages if the tenant abandons the leased premises in violation of the lease. *See* Tex. Prop. Code § 91.006. This duty requires that the landlord use objectively reasonable efforts to re-lease the premises when the tenant vacates in breach of the lease. *See Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997); *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.). The landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided. *See Austin Hill Country Realty*, 948 S.W.2d at 299. The tenant bears the burden of proving both the landlord's failure to mitigate and the amount by which the landlord could have reduced his damages but for that failure. *See id.*

Appellants cite Zaheer's deposition testimony for proof of his failure to mitigate. The testimony reflects that Zaheer did not list the property for rent or sale during the months remaining on the lease. The testimony reflects further that Zaheer commissioned a third party to draft a property inspection report two weeks after appellants vacated the premises. When questioned about his reasons for the report, Zaheer testified that he needed an assessment of damages before he could

7

calculate the cost of repairs. He initially denied that the inspection was done for the purpose of re-leasing, but later stated that it "was probably to see if we can lease the property."

The evidence is not conclusive that Zaheer failed to mitigate his damages, and even if it were, appellants have not cited any evidence showing the amount by which Zaheer could have reduced those damages. Appellants have failed to carry their burden of raising a fact issue with respect to this affirmative defense.

## C. Unilateral Termination

Appellants also argue that Chapter 92 of the Texas Property Code authorized their unilateral termination of the lease. This defense refers to multiple complaints involving security devices, smoke detectors, and other matters allegedly affecting their physical health and safety.

### 1. Security Devices

In Texas, landlords must comply with certain statutory requirements pertaining to security devices in leased dwellings. *See* Tex. Prop. Code § 92.158. "Security device" means a doorknob lock, door viewer, keyed dead bolt, keyless bolting device, sliding door handle latch, sliding door pin lock, sliding door security bar, or window latch in a dwelling. *Id.* § 92.151(11). A landlord's failure to comply with statutory requirements can result in several consequences, the most serious of which is the tenant's election to unilaterally terminate the lease. This extreme remedy is afforded by two separate provisions in the Code. The first provision, Section 92.164, states as follows:

> If a landlord does not comply with Section 92.153 . . . regarding installation or rekeying of a security device, the tenant may . . . serve a written request for compliance on the landlord, and . . . if the landlord does not comply on or before the third day after the date the notice is received, unilaterally terminate the lease without court proceedings.

*Id.* § 92.164(a)(2). The second provision, Section 92.165, affords the same remedy, but only "[i]f a landlord does not comply with a tenant's request regarding rekeying, changing, adding, repairing, or replacing a security device under Section 92.156(b), 92.157, or 92.158 in accordance with the time limits and other requirements of this subchapter." *Id.* § 92.165(2).

The difference between these two provisions is subtle. The first provision applies a three-day timeframe when the request to comply relates to the installation or rekeying of a security device under Section 92.153. Under that section, such devices must be equipped by the landlord "without necessity of request by the tenant" and they must "be operable throughout the time the tenant is in possession of [the] dwelling." *Id.* § 92.153(a), (h). The second provision applies a different timeframe when a device required under Section 92.153 has already been installed but the tenant makes a request under another section for some addition or change. *See id.* § 92.156(b) ("A landlord shall perform additional rekeying or change a security device at the tenant's expense if requested by the tenant."); *id.* § 92.157 (providing that certain additional security devices may be requested at any time); *id.* § 92.158 (providing that a landlord must repair or replace a security device on request or notification by the tenant that the device is inoperable or in need of repair or replacement). The Code affords the landlord a reasonable amount of time to make such additions or changes, and a reasonable amount of time is presumed to be no longer than seven days after the landlord receives notice of the request. *Id.* § 92.161(a).

Appellants invoke both of these provisions as affirmative defenses. We begin with their arguments under Section 92.164. A tenant may terminate the lease under this provision only if the landlord has failed to comply with Section 92.153 "regarding installation or rekeying of a security device." Appellants allege three

instances of noncompliance. First, they claim that Zaheer violated Section 92.153(a)(5), which requires the landlord to equip a keyless bolting device and door viewer on each exterior door of the dwelling. The rules of appellate procedure mandate that this argument be supported by "appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Appellants, however, submitted their brief with only two short and conclusory sentences on this issue. In support of their claim, they cite a span from the record consisting of more than three hundred sixty pages. We do not address this claim any further because it is appellants' duty, not this court's, to pore through the summary judgment record and find specific references in support of their argument.

Appellants claim next that Zaheer violated Section 92.153(g)(1). But this provision provides an exception to the landlord's duty to install security devices. Appellants have not explained how this provision, or its alleged violation, has any bearing on their claimed defense.

Appellants claim further that Zaheer violated Section 92.153(h), which states that a security device required by that section must be operable at all times the tenant is in possession of the leased dwelling. Appellants' discussion of this claim is again conclusory. They argue: "Multiple security devices such as the front door, garage door, security gate were not operable on numerous and/or extended occasions resulting in non-compliance with this subsection of the Code." As a matter of law, this claim does not raise an issue of fact because a "security device," as that term is defined under Chapter 92, includes none of these items. *See* Tex. Prop. Code § 92.151(11).

In their reply brief, appellants attempt to refocus their claim with more pertinent examples from the record. However, a party may not assert new issues in a reply brief. *See Zurita v. Lombana*, 322 S.W.3d 463, 477 (Tex. App.—Houston

[14th Dist.] 2010, pet. denied). Even if we were to consider the new arguments, they would not be availing. The newly cited evidence reflects that appellants made several maintenance requests during the course of their tenancy. The property apparently had foundation issues, and as the house shifted over time, some internal and external doors became stuck. On one occasion, portions of the front door had to be "shaved off," although the record indicates that this procedure may have been performed simply to fit clips for the alarm system. With respect to security devices, the record shows that appellants made some requests that the locks be changed and that Zaheer responded to those requests in a timely manner.

Appellants seem to insist that Zaheer was still in violation of Section 92.153(h) because, when they vacated the premises, there was another operability issue with the lock on the front exterior door. However, appellants failed to give adequate notice of this problem. The email sent on August 17, 2010 asked Zaheer, "Please send someone to look at the front door: 1. It's not opening at all 2. The doorknobs are extremely loose." Appellants did not identify an issue with the locks or a security device until an email on August 20—after they had already rejected Zaheer's offer to inspect the problem on the weekend. Appellants referenced the locks again in their email on August 21, but not in the context of a request. In that final email, they unequivocally stated that they "will have to move by September 1st." Appellants did not comply with the statutory prerequisite to termination because their notice to Zaheer was inadequate and they denied him an opportunity to cure. Accordingly, they have no defense under Section 92.164.

The next set of defenses alleges to support a termination under Section 92.165. A tenant may terminate under this provision only after the landlord fails to act in a reasonable time with respect to a request under Section 92.156(b), 92.157, or 92.158. Appellants refer to complaints under all three of these statutes.

11

Section 92.156(b) states, "A landlord shall perform additional rekeying or change a security device at the tenant's expense if requested by the tenant." Appellants cite evidence that they expressed concern over the locks and that there were five different access keys to the property. As with their other allegations, appellants have not cited any evidence of a request for "additional rekeying" of a security device. *See* Tex. Prop. Code § 92.151(10) (stating that "rekey" means to change or alter a security device that is operated by a key, card, or combination so that a different key, card, or combination is necessary to operate the security advice). To the extent that appellants made a request that Zaheer "change" a lock or security device, appellants cite no evidence that Zaheer failed to perform the change within a reasonable time.

Appellants argue next that Zaheer failed to comply with their requests under Section 92.157. That provision states that the landlord must install, upon the tenant's request, a keyed dead bolt on an exterior door if the door has either a doorknob lock but not a keyed dead bolt, or a keyless bolting device but not a keyed dead bolt or doorknob lock. *Id.* § 92.157(a)(1)(A)–(B). In conclusory manner, appellants claim that they "requested installation of deadbolts on multiple occasions, Landlord promised to have deadbolts installed, but neglected and/or refused to do so." Again, appellants cite no specific evidence that Zaheer neglected or refused to act on their request.

Appellants finally argue that Zaheer failed to comply with Section 92.158. This section requires that a landlord repair or replace a security device on request or notification by the tenant that the security device is inoperable or in need of repair or replacement. *Id.* § 92.158. Appellants contend, "On multiple occasions, Zaheer failed to timely, adequately, sufficiently, and/or truly repair security devices on multiple exterior doors of the lease property." No specific examples

12

have been cited for the claimed "multiple occasions." Even if we were to consider the emails in August 2010 as a request to fix an inoperable security device, the record shows that appellants did not afford Zaheer a chance to cure the issue within a reasonable time. Accordingly, the requisites to unilateral termination have not been satisfied.

We conclude that appellants failed to raise a fact issue with respect to their asserted affirmative defenses under Section 92.164 and Section 92.165.

## 2.    Smoke Detectors

As with security devices, landlords must also comply with statutory requirements concerning smoke detectors. A tenant may unilaterally terminate the lease without a court proceeding if the landlord fails act on the tenant's request to comply with these requirements. *Id.* § 92.260(6). As a condition precedent to unilateral termination, the tenant must give the landlord "written notice that the tenant may exercise his remedies under [Chapter 92, Subchapter F] if the landlord does not comply with the request [to install, inspect or repair a smoke detector] within seven days." *Id.* § 92.259(a)(2).

Appellants argue that unilateral termination is available to them under these provisions because "Zaheer failed to install a smoke detector to serve each and every bedroom pursuant to the code." *See id.* § 92.255 (requiring such detectors in new construction). But appellants cite no evidence of a request for such installations. Appellants have produced evidence showing that they once complained of a constantly beeping smoke detector. But again, they cite no evidence that the issue was not resolved within seven days, or that written notice was given of their intent to terminate the lease if Zaheer failed to act on their complaint. Without such evidence, appellants have no defense under these provisions.

13

Appellants alternatively complain of issues concerning the carbon monoxide detectors. The Property Code does not specifically address these detectors. Assuming, without deciding, that they fall within the meaning of smoke detectors, any asserted defense would fail because appellants still have not produced evidence that they gave Zaheer the requisite notice under Section 92.259(a)(2).

### 3. Physical Health and Safety

Appellants finally contend that they could terminate the lease because there were conditions in the house materially affecting their physical health and safety. Termination is permitted for this reason only when each of the following has been satisfied:

> (1) the tenant has given the landlord notice to repair or remedy a condition by giving that notice to the person to whom or to the place where the tenant's rent is normally paid;
>
> (2) the condition materially affects the physical health or safety of an ordinary tenant;
>
> (3) the tenant has given the landlord a subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy the condition following the notice given under Subdivision (1) or the tenant has given the notice under Subdivision (1) by sending that notice by certified mail, return receipt requested, or by registered mail;
>
> (4) the landlord has had a reasonable time to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's notice under Subdivision (3);
>
> (5) the landlord has not made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's notice under Subdivision (3); and
>
> (6) the tenant was not delinquent in the payment of rent at the time any notice required by this subsection was given.

14

*See id.* § 92.056(b), (e)(1).

Appellants complain of a "litany of dangerous conditions," including warped floors, inoperable garage doors, exorbitant utility bills, inadequate window sealing, and water leaks. They also complain that interior doors, electrical outlets, the fireplace, toilets, and the gate were in some unspecified state of disrepair. We are aware of no authority, and appellants have cited none, that these conditions materially affect the physical health and safety of an ordinary tenant.

Appellants also allege that a water heater "literally explod[ed], blowing a hole in the roof above the master bedroom, and causing significant leak through the ceiling of the bedroom, down the walls, damaging sheetrock and carpeting." No direct evidence is cited for this allegation. Appellants claim instead that this issue is supported by the inspection report prepared after their surrender of the property. We have reviewed the report and have not found any mention of an exploding water heater or a hole in the roof. The only negative comments in the report about the roof are that tree branches should be removed over the roof surface. The inspector did not identify any holes in the attic, finding merely that additional insulation should be added to meet minimum requirements. Comments about the water heater reflect only an appearance of a carbon monoxide leak and possible water damage.

Appellants complain about the carbon monoxide leak as another issue affecting their physical health and safety. The record shows that appellants notified Zaheer of this issue in May 2010, and that Zaheer sent a company to correct the leak. Clearly, Zaheer made a diligent effort to repair the problem. Appellants seem to suggest that the problem was not remedied because a leak was still identified after they vacated the premises. Even so, appellants cite no evidence showing that they gave Zaheer the subsequent written notice required by statute.

15

Appellants finally complain that the broken door materially affected their safety because, in the event of a fire, the door would prevent them from escaping. Appellants cite no authority that a door that will not open is sufficient, by itself, to constitute a material threat to a tenant's physical health and safety. Moreover, the record shows that the door at issue was not absolutely preventing appellants' ingress and egress. The home had other exterior doors which appellants were accustomed to using. Also, appellants cannot show that Zaheer did not make a diligent effort to correct the door. He offered to send his contractor on the weekend less than seven days after the problem was identified. Appellants objected to the offer, and before the door could actually be fixed, they decided to vacate. On this record, appellants cannot show that they might have an applicable defense under Section 92.056.

Because appellants failed to raise a fact issue with respect to any of their affirmative defenses, Zaheer was entitled to judgment as a matter of law on his breach of contract claim.

### D. Counterclaim

Appellants asserted a counterclaim against Zaheer based on allegations relating to the wrongful withholding of their security deposit. A landlord who retains a security deposit in bad faith is liable for certain statutory damages. *See id.* § 92.109. Appellants contend that Zaheer acted in bad faith because he did not return the security deposit within thirty days from the date of their leaving, and because they did not cause any damage to the property beyond normal wear and tear.

Appellants' contentions are without merit for the following reasons. First, the lease authorized Zaheer to deduct reasonable charges from the security deposit for such reasons as accelerated rents and attorney's fees, costs of court, costs of

services, and other reasonable costs incurred in any legal proceeding against the tenant. The four months of accelerated rents far exceeded appellants' security deposit in this case. Because appellants are legally liable for those rents, Zaheer was not required to return the security deposit when they surrendered the property. *See id.* § 92.104(a) ("Before returning a security deposit, the landlord may deduct from the deposit damages and charges for which the tenant is legally liable under the lease or as a result of breaching the lease."); *see also id.* § 92.104(c) (providing that the landlord is not required to give the tenant a description and itemized list of deductions if the tenant owes rent when he surrenders possession of the premises).

Furthermore, the lease required that appellants give at least thirty days' written notice of surrender before Zaheer was obligated to refund or account for the security deposit. The evidence is undisputed that appellants gave Zaheer only ten days' notice. Additionally, by letter dated October 1, 2010, Zaheer described to appellants the damages allegedly sustained to the property, and the estimated costs of repairs exceeded appellants' security deposit. The letter accordingly establishes that Zaheer had reason to believe that he was entitled to retain the deposit, and thus, was not acting in bad faith. *See Pulley v. Milberger*, 198 S.W.3d 418, 428–29 (Tex. App.—Dallas 2006, pet. denied). Also, Zaheer was not obligated to return the deposit until appellants provided him with a forwarding address. *See* Tex. Prop. Code § 92.107. Appellants have not cited any evidence that this notice was given.

Finally, appellants contend that Zaheer wrongfully withheld their deposit because the evidence showed no damage beyond normal wear and tear. Appellants rely heavily on the inspection report in support of this argument. But they ignore two critical facts: first, Zaheer had other legitimate reasons for retaining the security deposit, and second, Zaheer nonsuited his claim for damages beyond normal wear and tear. Appellants have not carried their burden to establish a

17

genuine issue of material fact that Zaheer withheld their deposit in bad faith. On these facts, we conclude as a matter of law that he was not required to return it.

## CONCLUSION

Zaheer established that he was entitled to judgment as a matter of law on his claim for breach of contract. Appellants did not raise a genuine issue of material fact with regard to either their asserted affirmative defenses or their counterclaim. Appellants' two issues are overruled, and the judgment of the trial court is affirmed.


/s/     Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.