

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

MOHAMMED T. JAMSHED, §

§     No. 08-13-00101-CV

    Appellant, §

§     Appeal from the

v. §

§     43rd District Court

McLANE EXPRESS INC., D/B/A THE §
C.D. HARTNETT COMPANY,     of Parker County, Texas

§

    Appellee.     (TC# CV08-1669)

§

## **OPINION**

This is an appeal from a final judgment in favor of Appellee McLane Express, Inc. D/B/A

The C.D. Hartnett Company ("Hartnett") against Appellant Mohammed T. Jamshed on his

personal guaranty of an open account for his business, Shawn & Sameer, Inc. ("S&S").

Appellant raises four issues for review. For the reasons that follow, we affirm.[1]

## **BACKGROUND**

In 2004, Appellant signed a credit application with Hartnett, a wholesale food distributor,

on behalf of S&S. As part of the application, Appellant attached a document listing the different

store locations owned and operated by S&S. Under the section listing Appellee's conditions for

extension of credit, Appellant signed the application and identified himself as the president of the

---

[1] As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

company.  Below that section is a section titled "Individual Personal Guaranty" which Appellant also signed.  In pertinent part, the section provides:

**INDIVIDUAL PERSONAL GUARANTY**

Date ___8-12-04___ 19 _____

Mohammed T Jamshed (Tony)___, residing at 8149 Hulen Park Cir. Ft.
**Name [Please Print]**

Worth Tx. 76123 for and in consideration of you extending credit at my request to __Shawn & Sameer Inc._____
**Name of Customer**

(Hereinafter referred to as the "Company") of which I am (Title): President_____, hereby personally guarantee to The C.D. Hartnett Company, payment of any obligation of the Company and I hereby agree to bind myself to pay you on demand, any sum which may become due to you by the Company whenever the Company shall fail to pay the same.  It is understood that this guaranty shall be continuing and irrevocable guaranty and indemnity for such indebtedness of the Company.  I hereby waive notice of default, non-payment, and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed and to all renewals of extension of credit.  The undersigned guarantor agrees to pay in the event the amount becomes delinquent and is turned over to an attorney for collection, reasonable attorney's fees, plus all attendant collection costs.

At trial, Stephen Milliken, Hartnett's president, explained that Hartnett would not extend credit terms to a prospective customer until the credit application was completed and signed by the customer.  It was Hartnett's general policy to require a personal guaranty from the owner of its corporate entity customers.  The personal guaranty executed by Appellant was required before Hartnett would extend credit to S&S.  Milliken personally approved the credit application signed by Appellant for S&S.

As a result of S&S's credit application, Hartnett sold and delivered product and merchandise to S&S on credit terms.  Hartnett assigned each S&S store receiving product an individual account number which was tied to S&S's master account.  When S&S became delinquent on its open account, Hartnett sent Appellant a demand letter reminding Appellant of his

2

personal guaranty and demanding immediate payment. S&S failed to make payment to Hartnett. Milliken testified that S&S filed bankruptcy and at that time it owed Hartnett $91,817.67.

Hartnett sued Appellant on the personal guaranty seeking to recover the unpaid balance of S&S's open account and attorney's fees. Alternatively, Hartnett alleged Appellant was liable under the doctrine of *quantum meruit*. Appellant responded to the suit with a general denial and asserted various affirmative defenses. After a bench trial, the trial court entered judgment in favor of Hartnett, ordered Harnett recover $91,817.67 from Appellant, and awarded $59,235 in attorney's fees to Hartnett. Appellant then moved for a new trial. This appeal followed.

## DISCUSSION

In four issues on appeal, Appellant contends (1) the alleged personal guaranty he signed was not enforceable; (2) Appellant's liability is limited to the debts incurred by S&S for stores located in Territory 62; (3) Hartnett failed to establish each element of its cause of action with competent evidence; and (4) the trial court erred in granting Hartnett attorney's fees. In essence, Appellant is challenging the legal and factual sufficiency of the evidence and both parties cite to the proper standards of review.

*Standard of Review*

In a bench trial, without findings of fact or conclusions of law, the trial court's judgment implies all findings of fact necessary to support it. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83-84 (Tex. 1992); *In re M.C.T.*, 250 S.W.3d 161, 172 (Tex.App. – Fort Worth 2008, no pet.); *Alford v. Johnston*, 224 S.W.3d 291, 296 (Tex.App. – El Paso 2005, pet. denied). When a reporter's record is provided, as in this case, these implied findings are not conclusive, and may be challenged by legal and factual sufficiency of the evidence issues. *M.C.T.*, 250 S.W.3d at 172; *Alford*, 224 S.W.3d at 296.

3

In conducting a legal sufficiency review, we consider evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. However, in a factual sufficiency review, we consider and weigh all of the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our reviews, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within his exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819; *Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex.App. – Houston [14th Dist.] 1984, writ ref'd n.r.e.).

*Law Applicable to Guaranty Agreements*

A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor fails to perform. *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex.App. – Dallas 2012, no pet.) (quoting *Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex.App. – Dallas 1990, no writ)). A plaintiff asserting a guaranty claim must establish: (1) the existence and ownership of the guaranty, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor. *See Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex.App. – Dallas 2013, no pet.); *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 8 (Tex.App. – Dallas 1994, no writ); *Shin v. Sharif*, No. 02-08-00347-CV, 2009 WL 1565028, at *2 (Tex.App. – Fort Worth June 4, 2009, no pet.)

4

(mem. op., not designated for publication); *see also Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex.App. – Dallas 1987, writ ref'd n.r.e.) (stating that when a guaranty is written and signed by guarantor, its existence presumes consideration).

The rule governing interpretation of a guaranty agreement makes a guarantor a favorite of the law. *Moffitt v. DSC Finance Corp.*, 797 S.W.2d 661, 666 (Tex.App. – Dallas 1990), *writ denied, improvidently granted,* 815 S.W.2d 551 (Tex. 1991). A guarantor agreement is to be strictly construed and may not be extended beyond its precise terms by construction or implication. *Robinson v. Surety Ins. Co. of Cal.*, 688 S.W.2d 705, 708 (Tex.App. – Fort Worth 1985, no writ). The interpretation of the guaranty is a question of law we review *de novo. See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

## ENFORCEABILITY OF THE PERSONAL GUARANTY

In Issue One, Appellant asserts that the personal guaranty he signed was unenforceable because (1) Hartnett failed to prove Plaintiff McLane Express, Inc. owned the personal guaranty; (2) no consideration supported the personal guaranty; and (3) Hartnett failed to show that it used reasonable diligence to collect from S&S, the primary obligor.

### Ownership of the Guaranty

In his first sub-issue, Appellant contends Hartnett failed to present any evidence establishing ownership of the personal guaranty. Appellant asserts that "[c]orporations are distinct entities, and pleadings establish that [Hartnett] was acquired by [McLane Express] and then that branch of the business is being run under an assumed name. Because of the acquisition of [Hartnett], [McLane Express] had to prove that it, and not Hartnett, was entitled to enforce the guaranty." He further argues Hartnett failed to introduce any evidence showing the guaranty was assigned to McLane Express, that McLane Express was the same entity as Hartnett despite the

5

merger or acquisition of Hartnett, or that McLane Express owned the guaranty. However, as correctly noted by Hartnett, Appellant's sub-issue concerning the assignment is barred on appeal because he did not properly raise it below. Hartnett further maintains Appellant's ownership argument is without merit because the record contains sufficient evidence to support the judgment of the trial court.

Rule 93 of the Texas Rules of Civil Procedure requires that certain pleas be sworn or verified by affidavit unless it is obvious in context that "the truth of such matters appear of record[.]" TEX.R.CIV.P. 93; s*ee e.g.*, TEX.R.CIV.P. 93(1) (allegations that plaintiff lacks legal capacity to sue or that defendant does not have legal capacity to be sued); 93(2) (allegations that plaintiff is not entitled to recover in capacity in which he sued or that defendant is not liable in capacity in which he is sued); 93(4) (allegations that there is a defect of parties); 93(8) (denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought); 93(14) (allegations that a party is not doing business under an assumed name). Here, the record shows Appellant filed a general denial and raised an affirmative defense denying that all conditions precedent to Hartnett's claim for recovery had occurred or been met. However, there is nothing in the record to suggest Appellant was challenging the issue of ownership of the guaranty or anything related to any assignment of the personal guaranty.

Appellant did not file a verified denial denying the genuineness of the assignment of a written instrument upon which suit was brought and he did not allege a defect in the parties or that McLane Express was not doing business under the assumed name of Hartnett. TEX.R.CIV.P. 93(8),(4),(14). Failure to file verified pleas as required by Rule 93 waives a party's right to complain about the issue. *See White v. Harrison*, 390 S.W.3d 666, 678 (Tex.App. – Dallas 2012, no pet.) (where appellant claimed not to be liable as guarantor appellate court concluded there was

no issue for appellate court to review because appellant failed to file verified plea); *James Clark, Inc. v. Vitro America Inc.*, 269 S.W.3d 681, 682 (Tex.App. – Beaumont 2008, no pet.) (where appellee alleged that it was also known by two other names and appellants failed to file a verified denial regarding a defect in parties or a plea that plaintiff was not doing business as alleged appellate court concluded appellants' allegation was not at issue); *see also Thomas v. Sun Indus., Inc.*, No. 05-92-02559-CV, 1994 WL 21898, at *2 (Tex.App. – Dallas Jan. 27, 1994, writ denied) (op., not designated for publication) (appellant waived defense that appellant was not doing business under assumed name because defendant failed to file verified denial).   Because Appellant failed to file a verified denial challenging any assignment of the guaranty, alleging a defect of parties, and did not respond to Hartnett's assertion that it was suing as McLane Express, Inc., d/b/a The Hartnett Company, Inc., Appellant's complaint is not before us on appeal.   *See id*.

Even assuming this sub-issue was not waived, Appellant's argument would fail. Appellant argues there is no evidence of ownership of the guaranty.   In considering Appellant's no-evidence point, we consider only the evidence supporting the finding and disregard all evidence and inferences to the contrary.   *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992).   To prevail on a guaranty claim, Hartnett had to show the existence and ownership of the guaranty.   *Gold's Gym Franchising LLC*, 400 S.W.3d at 160.   Consequently, Appellant must show there was no evidence to support the trial court's implied findings.   *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

Appellee sued Appellant as "McLane Express, Inc. d/b/a The C.D. Hartnett Company." At trial the credit application containing the personal guaranty signed by Appellant was admitted into evidence.   Milliken, president of Hartnett, testified he personally approved the credit

7

application signed by Appellant and explained the signing of the personal guaranty was a prerequisite for Hartnett to extend credit terms to S&S.   Milliken further testified Hartnett was the current owner of the personal guaranty and was seeking to recover the amount owed on S&S's account based on the personal guaranty signed by Appellant.

Appellant is correct in pointing out that, at trial, Milliken agreed Hartnett had been sold. Milliken's response was given only after counsel for Hartnett asked if Milliken's family had owned the company for over 100 years until it was recently sold.   Milliken's response was neither developed nor discussed further at trial.   All of the evidence, when looked at most favorably to support the judgment, is legally sufficient to show McLane Express, Inc. d/b/a The C.D. Hartnett Company's ownership of the personal guaranty signed by Appellant.   *See City of Keller*, 168 S.W.3d at 807; *Weirich*, 833 S.W.2d at 945.   Moreover, after examining all the evidence, we cannot say that the evidence supporting the trial court's implied finding on the element of the status of ownership of the personal guaranty is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.   *Cain*, 709 S.W.2d at 176.

### Consideration

In his second sub-issue, Appellant argues the evidence conclusively established that the guaranty was not supported by consideration.   Hartnett responds that Appellant may not raise the issue of lack of consideration on appeal in part, because Appellant failed to raise the issue in a verified plea.   We agree.

Appellant's first amended original answer which contains a general denial and two affirmative defenses fails to raise a lack of consideration defense.   As a result, Appellant waived that defense.   *See* TEX.R.CIV.P. 93(9) (requiring verified plea that written instrument upon which pleading is founded is without consideration, or that the consideration has failed in whole or part);

8

*Murphy v. Canion*, 797 S.W.2d 944, 949-50 (Tex.App. – Houston [14th Dist.] 1990, no writ) (holding appellant waived defense that there was no consideration for agreement where he failed to plead that defense by verified pleading).

### Reasonable Diligence

In his third sub-issue, Appellant maintains the guaranty is unenforceable because Hartnett failed to satisfy a condition precedent by failing to introduce any evidence that it used reasonable diligence to collect the amount due on the open account from S&S. Appellant argues "[b]ecause there was no proof of any diligence, Plaintiff did not prove it had the right to enforce the debt against [Appellant]." In support of his argument, Appellant distinguishes between a guarantor of payment and a guarantor of collection. It appears Appellant is arguing that he is a guarantor of collection and not a guarantor of payment because Hartnett never argued that he was a guarantor of payment or that he was jointly and severally liable.

Texas law recognizes a distinction between a "guaranty of collection (or conditional guaranty)" and a "guaranty of payment (or unconditional guaranty)." *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex.App. – Houston [14th Dist.] 1997, no pet.). A guarantor of collection promises to pay the debt if it cannot be collected from the primary obligor by the use of reasonable diligence. *See Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 265 (Tex.App. – Houston [14th Dist.] 2003, pet. denied) (Frost, J., concurring). Conversely, a guarantor of payment is primarily liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to the guarantor's liability. *Cox*, 949 S.W.2d at 530. Simply put, a guaranty of payment is an obligation to pay the debt due if the debtor does not. *See id*. A guaranty agreement is deemed to be a guaranty of payment unless the agreement specifies otherwise, which

9

means the guarantor is jointly and severally liable on the debt and may be sued under the same terms as the principal obligor. *See* TEX. BUS. & COM. CODE ANN. § 3.419(e) (West 2002).[2]

Under the "Individual Personal Guaranty" section of Hartnett's credit application, Appellant personally guaranteed to Hartnett "payment of any obligation of [S&S]" and agreed to bind himself "to pay [Hartnett] on demand, any sum which may become due to [Hartnett] by [S&S] whenever [S&S] shall fail to pay the same." There is nothing in the language of the personal guaranty signed specifying that Appellant's guaranty was a guaranty of collection or that it was conditioned upon Hartnett using reasonable diligence to collect from S&S after S&S failed to pay on the debt owed. Based on the unconditional language of the personal guaranty, we conclude it was a guaranty of payment and not of collection. *See id.* Therefore, as a guarantor of payment, Appellant was primarily liable and waived any requirement that Hartnett take action against S&S as a condition precedent to Appellant's liability. *See Cox*, 949 S.W.2d at 530. Because Appellant's guaranty was a guaranty of payment, Hartnett was not required to show the condition precedent of reasonable diligence, therefore the evidence is legally sufficient to support the trial court's implied finding that all conditions precedent to recovery under the guaranty of payment had occurred.

Issue One is overruled.

## SCOPE OF THE GUARANTY AGREEMENT

In Issue Two, Appellant argues that Hartnett can only recover against Appellant for $6,202.02, the outstanding balance of the Territory 62 store, because Hartnett failed to prove

---

[2] Section 3.419(e) provides that "[i]f the signature of a party to an instrument is accompanied by words indicating that the party guarantees payment or the signer signs the instrument as an accommodation party in some other manner that does not unambiguously indicate an intention to guarantee collection rather than payment, the signer is obliged to pay the amount due on the instrument to a person entitled to enforce the instrument in the same circumstances as the accommodated party would be obliged, without prior resort to the accommodated party by the person entitled to enforce the instrument."

10

Appellant's liability under the guaranty extended to all S&S store accounts. More specifically, Appellant asserts there is a latent ambiguity in the credit application in which the personal guaranty is found. Hartnett points out this issue was never raised in the trial court and as such, maintains Appellant has waived his complaint on appeal.

Generally, a party is required to expressly plead affirmative defenses "and any other matter constituting an avoidance or affirmative defense." *See* TEX.R.CIV.P. 94; *see also Woods v. William M. Mercer, Inc*. 769 S.W.2d 515, 518 (Tex. 1988). Ambiguity is an affirmative defense that must be raised below. *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 656 (Tex.App. – Houston [1st Dist.] 1986, writ ref'd n.r.e.). The record shows Appellant never pleaded or otherwise raised his ambiguity argument to the trial court. Additionally, there is nothing in the record to indicate that the trial court *sua sponte* considered whether the credit application was ambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (stating that a court may conclude a contract is ambiguous even in the absence of such a pleading by the parties); *May v. Buck*, 375 S.W.3d 568, 579 (Tex.App. – Dallas 2012, no pet.) (same). Because Appellant failed to present this issue in the trial court, his complaint was waived. *See* TEX.R.APP.P. 33.1(a).

Issue Two is overruled.

## SWORN ACCOUNT

In Issue Three, Appellant contends Hartnett failed to prove each element of its underlying agreement or debt cause of action with competent evidence. He claims that "[a]bsent proof of the underlying cause of action, the amount of the debt is not sufficiently established to hold [Appellant] liable on the guaranty." In reply, Hartnett urges that the record contains more than

11

sufficient evidence to support the trial court's implied finding Hartnett established each element of the claim underlying its suit on the guaranty.

The essential elements of a suit on a sworn account include: (1) the sale and delivery of the merchandise or performance of services; (2) the amount of the account is "just," that is, the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges, are usual, customary or reasonable; and (3) the outstanding amount remain unpaid. *See Ellis v. Reliant Energy Retail Servs., L.C.C.*, 418 S.W.3d 235, 246 (Tex.App. – Houston [14th Dist.] 2013, no pet. h.); *see also Fain Family First Ltd. P'ship v. EOG Resources, Inc.*, No. 02-12-00081-CV, 2013 WL 1668281, at *2 (Tex.App. – Fort Worth Apr. 18, 2013, no pet.) (mem. op., not designated for publication). Appellant argues the documentary evidence presented at trial did not prove the sale and delivery of goods.

At trial, Milliken testified Harnett sold and delivered product to S&S on credit terms as a result of the credit application signed by Appellant. He further testified a paper trail was created when Hartnett sold and delivered merchandise on credit to S&S. Milliken explained that an invoice was generated when a customer ordered product and Hartnett required a customer to sign a receipt reflecting delivery of the product. Hartnett subsequently would mail a statement to the customer for billing purposes.

Hartnett admitted several documents into evidence without objection to show product was sold and delivered to S&S which included itemized invoices showing that goods were sold to the different store locations owned and operated by S&S. A manifest accompanied each individual invoice reflecting receipt of delivery. The manifests contained the following paragraph:

> Agreement between buyer hereof, whose name appears above, and the C.D. Hartnett Company hereof is that buyer has placed this order and by his signature hereto, or that of his agent or employee acknowledges receipt of the merchandise listed, and agrees to pay the C.D. Hartnett Company at

its offices in Weatherford, Parker County, Texas, for same, within terms as stated above. Interest shall accrue at 1 1/2% per month on the unpaid balance after maturity. Reasonable attorney's fees will be added if collection forced.

All of the manifests except for the manifest associated with Invoice No. 127026 contain signatures on the applicable customer and driver signature lines that precede the paragraph referenced above. According to Milliken's testimony, each of the invoices were for the product sold and delivered to S&S by Hartnett and were the invoices that were not paid. Hartnett sold and delivered merchandise to S&S as described in the documents that were admitted into evidence. The total amount owed by S&S was $91,817.67 which included all offsets and credits. The amount of the account was just and the prices charged were usual, customary, and reasonable. Milliken further explained that at the time S&S filed bankruptcy, the outstanding amount that remained unpaid was $91,817.67.

The record also shows Appellant testified he understood that he was being sued on an amount for products S&S purchased for its stores. He further agreed that when he signed the individual personal guaranty, S&S was already obligated to Hartnett for the product that Hartnett sold and delivered to S&S. Appellant also stated that product was sold to S&S as part of the credit application and he signed the guaranty as a president of the corporation to get the food as credit.

Based on the record, we conclude the evidence is legally and factually sufficient to support the trial court's implied finding that there was a sale and delivery of goods to S&S. We also conclude the evidence is legally and factually sufficient to establish a sworn account.

**Quantum Meruit**

Next, Appellant argues Hartnett is also not entitled to recover under a theory of *quantum meruit*. Because we conclude the evidence in the record is sufficient to support the trial court's

13

implied finding that Hartnett proved each element to establish a sworn account, we need not address Appellant's complaint on Hartnett's alternative *quantum meruit* theory. *See* TEX.R.APP.P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Issue Three is overruled.

## ATTORNEY'S FEES

In Issue Four, Appellant complains of the trial court's award of attorney's fees to Hartnett. In its application for attorney's fees filed on December 18, 2012, Hartnett requested attorney's fees pursuant to the personal guaranty upon which the suit was based and section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008). In his affidavit for attorney's fees, Mark S. Dugan, counsel for Hartnett, stated his client incurred $59,235 in attorney's fees in this case. Dugan also requested additional attorney's fees in the event of post-judgment discovery, an appeal, and a petition for review being granted by the Texas Supreme Court. The trial court awarded Hartnett $59,235 in attorney's fees. Appellant argues the trial court erred by awarding attorney's fees because Hartnett's counsel's affidavit for attorney's fees failed to comply with the requirements of section 18.001 of the Texas Civil Practice and Remedies Code. *See id*. Appellant further argues the attorney's fee award was not supported by competent evidence and was excessive. We begin by addressing Appellant's second attorney's fee complaint.

In general, we review a trial court's award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Texas courts have consistently held that an attorney's fee award must be supported by competent evidence. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 852 (Tex. 2000). A trial court's award of attorney's fees without sufficient

14

supporting evidence constitutes an abuse of discretion. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 672 (Tex. 1990). The party seeking to recover attorney's fees carries the burden of proof to show reasonableness. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). Whether a trial court's award of attorney's fees is reasonable is a question of fact. *See Bocquet*, 972 S.W.2d at 20. In determining the reasonableness of attorney's fees the following eight factors are considered:

(1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) [T]he likelihood…that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) [T]he fee customarily charged in the locality for similar legal services;

(4) [T]he amount involved and the results obtained;

(5) [T]he time limitations imposed by the client or by the circumstances;

(6) [T]he nature and length of the professional relationship with the client;

(7) [T]he experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) [W]hether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equp. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 422 (Tex.App. – Fort Worth 2011, pet. denied).

In arguing that the award of attorney's fees is not supported by competent evidence and is excessive, Appellant asserts Hartnett's attorney's fee affidavit is legally insufficient. When reviewing the legal sufficiency, we consider the evidence in the light most favorable to the challenged finding and indulge ever reasonable inference that would support it. *See City of Keller*, 168 S.W.3d at 822.

15

Appellant contends the attorney's fee affidavit was conclusory. He also maintains there is no evidence upon which the trial court or he could have identified what time was excessive because the affidavit was not supported by itemized timesheets or billing records. However, in general, attorney's fees do not have to be itemized. *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex.App. – Dallas 2003, no pet.); *see also Town & Country P'ship v. Frontier Leasing Corp.*, No. 01-07-00555-CV, 2009 WL 723991, at *4 (Tex.App. – Houston [1st Dist.] Mar. 19, 2009, no pet.) (mem. op., not designated for publication) (explaining that attorney's fee affidavit need not identify how many hours were spent on each specific task and the corresponding charge). Furthermore, "'billing records need not be introduced to recover attorney's fees.'" *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 514 (Tex.App. – Fort Worth 2011, pet. denied) (quoting *Air Routing Int'l Corp. (Can.) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex.App. – Houston [14th Dist.] 2004, no pet.)).

The sworn affidavit of attorney Mark S. Dugan recited that his law firm was retained by Hartnett to obtain a judgment against Appellant. Dugan stated he had been practicing law since 1984 and had been a shareholder at his firm for over twenty years. Dugan expressed his familiarity with the legal fees customarily charged in Parker County, Texas and stated his billing rate was $350 an hour. Dugan's affidavit detailed the type of work performed by him, which included preparing pleadings, a motion for summary judgment, conducting discovery, performing legal research, trial preparation, drafting briefs, handling discovery disputes, preparing for a summary judgment hearing, reviewing bankruptcy schedules, conversing with a Chapter 7 trustee, and attending meetings with his clients to review documents and prepare for trial. Dugan stated he had worked over 170 hours over the past several years working on Hartnett's case. Dugan

requested $59,235 in attorney's fees and averred that these fees were reasonable, necessary, usual, and customary fees for the type of services involved in the instant case.

We conclude Hartnett's attorney's fee affidavit was not conclusory; therefore, the affidavit constituted sufficient evidence to support the trial court's award of attorney's fees. *See Texas Commerce Bank, Nat. Ass'n v. New*, 3 S.W.3d 515, 517-18 (Tex. 1999) (holding attorney's fee affidavit was not conclusory and was legally sufficient where attorney testified that he was a duly licensed attorney, familiar with usual and customary attorney's fees in the area, and that based on his knowledge of the services rendered, the attorney's fee was reasonable).

Appellant further argues Hartnett's attorney's fee affidavit failed to comply with section 18.001(c)(3) of the Civil Practice and Remedies Code by not providing itemized statements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(c)(3) (West 2008). Nonetheless, as already noted, attorney's fees do not have to be itemized. *See Burnside Air Conditioning & Heating*, 113 S.W.3d at 898; *see also Town & Country P'ship*, 2009 WL 723991, at *4. Furthermore, billing records are not needed to recover attorney's fees. *Sundance Minerals*, 354 S.W.3d at 514. Lastly, Appellant argues Hartnett failed to serve a copy of the attorney's fee affidavit on Appellant at least thirty days before the day the trial court relied on it to render final judgment as required by section 18.001(d) of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(d) (West 2008). However, Appellant failed to raise this complaint in the trial court in either his "Objection to Plaintiff's Application for Attorneys' Fees to Be Included in Final Judgment" or motion for new trial; thus, it is waived on appeal. *See* TEX.R.APP.P. 33.1(a)(1)(A) (to preserve a complaint for appellate review, the record must show that a party complained to the trial court through a timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint, and the trial court made a ruling on the complaint); *see*

17

*also Sheffield Dev. Co. v. Carter & Burgess, Inc.*, No. 02-11-00204-CV, 2012 WL 6632500, at *16 (Tex.App. – Fort Worth Dec. 21, 2012, pet. dism'd) (mem. op., not designated for publication) (concluding appellant waived complaint that attorney's fee affidavit was incompetent because it was not served within twenty-one days of hearing where appellant did not object on that basis and had agreed to hearing and shortened notice).

Because we conclude the attorney's fee affidavit supporting Harnett's application for attorney's fees is not conclusory and is legally sufficient to support the trial court's award of attorney's fees to Hartnett, the trial court did not abuse its discretion in making that award.  *See Bocquet*, 972 S.W.2d at 20.

Issue Four is overruled.

## CONCLUSION

Having overruled Appellant's four issues, we affirm the judgment of the trial court.


YVONNE T. RODRIGUEZ, Justice

November 7, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating