Gary HASTY, Appellant

v.

KELLER HCP PARTNERS, L.P., Appellee.

No. 05–07–00884–CV.

Court of Appeals of Texas, Dallas.

July 29, 2008.

James M. Murphy, Dallas, for Appellant.

Robert Clary, William L. Foreman, Owens, Clary & Aiken, L.L.P., Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Appellant Gary Hasty appeals a summary judgment granted in favor of appellee Keller HCP Partners, L.P. (Keller) in Keller's suit against Hasty to enforce a lease guaranty. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Keller, as landlord, leased space inside a medical center to At Home Pharmacy Keller, L.P. (the Pharmacy). Hasty, the Pharmacy's president, signed the lease on behalf of the Pharmacy. A representative of Keller's general partner, Keller MOB GP, LLC (Keller GP), signed the lease on behalf of Keller. On the same day, Hasty entered into a lease guaranty that was designated as a rider to the lease and was expressly "made a part of" the lease. Unlike the lease, however, the guaranty identifies Keller GP, not Keller, as the "Landlord."

Eleven months after the parties entered into the lease and guaranty, Keller sent a notice of default and demand for payment to the Pharmacy and Hasty. They did not respond to that notice and demand.

### PROCEDURAL BACKGROUND

Keller sued the Pharmacy for breach of the lease agreement, seeking damages, a declaratory judgment, and attorneys' fees. Keller also sued Hasty on the guaranty and for attorneys' fees. Hasty filed a general denial. The Pharmacy did not file an

answer, and the trial court signed an interlocutory default judgment against it.

Keller moved for summary judgment under rule 166a(c) on its claim against Hasty on the guaranty. In support of its motion, Keller filed an affidavit signed by Nikki Matthews, its director of property management, in which she attested to the fact that the Pharmacy "failed to pay rent and other agreed monies" amounting to "a total of $44,902.77 under the Lease." Keller also filed an affidavit signed by Robert J. Clary, Keller's attorney, in which he described his qualifications and attested to the fact that $6,950 "would constitute appropriate and reasonable attorneys' fees, costs and expenses in this matter."

In response, Hasty argued that Keller did not demonstrate that it is entitled to summary judgment. Specifically, Hasty argued that he is not liable to Keller under the guaranty because the guaranty states that it is "to and for the benefit of Keller [GP]," not Keller. He also argued that the guaranty "by its specific terms, is not an unconditional guaranty of the Lease agreement sued upon, but is rather specifically limited to 'the payment by [the Pharmacy] of any unamortized portion of the Tenant Improvement Allowance ($60,000.00) and the Brokers' Commission ($7,878.65).'" Hasty did not submit any controverting summary-judgment evidence.

In reply, Keller acknowledged that the guaranty identified its general partner, Keller GP, as the "Landlord," instead of Keller, but argued that "such an oversight will not provide the guarantor any defense where the parties are well aware of what lease the guaranty secures and which party is the true landlord." Keller also argued that the guaranty is not limited as Hasty contended, but instead obligates Hasty to guarantee all of the Pharmacy's obligations under the lease. Keller noted that the title of the guaranty is "Guaranty of Lease" and argued that "the express terms of the Guaranty demonstrate that Hasty is guaranteeing three obligations: (1) 'the full and prompt performance by [the Pharmacy],' (2) 'the payment by [the Pharmacy] of any unamortized portion of the Tenant Improvement Allowance,' and (3) the payment of [the Pharmacy] of any unamortized portion of the 'Brokers Commission.'" Keller also noted that the guaranty expressly provides that it is "specifically understood and agreed by [Hasty] that [Hasty's] liability under the Lease shall be primary" and further provides that Hasty will pay all costs and expenses, including attorneys' fees, accrued in connection with enforcing the lease. Finally, Keller argued that, in a deemed admission,[1] "Hasty has admitted ... that he owes 'not less th[a]n $20,000' to Keller,'" and noted that the amount of damages and attorneys' fees attested to in summary judgment affidavits submitted by Matthews and Clary remained uncontroverted.

The trial court granted Keller's motion and rendered judgment that Keller recover from the Pharmacy and Hasty, jointly and severally, (1) $44.902.77 in actual damages, (2) $6,950 in attorneys' fees, (3) taxable court costs, and (4) post-judgment interest at five percent per annum on the actual damages and attorneys' fees from the date of judgment until paid. Hasty appealed.

### SUMMARY JUDGMENT AND STANDARD OF REVIEW

A plaintiff moving for summary judgment under rule 166a(c) must prove that it

---

1. Hasty did not respond to Keller's requests for admission. Under the Texas Rules of Civil Procedure, when a party does not timely respond to requests for admission, the requests are "considered admitted without the necessity of a court order." Tex.R. Civ. P. 198.2(c).

is entitled to summary judgment as a matter of law on each essential element of its cause of action. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). If the movant establishes a right to summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact in order to defeat summary judgment. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

■ We review a trial court's grant of a traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). We do not consider evidence that favors the movant's position unless it is uncontroverted. *Wesby v. Act Pipe & Supply, Inc.,* 199 S.W.3d 614, 616 (Tex. App.-Dallas 2006, no pet.) (citing *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965)).

## Analysis

■ "To obtain summary judgment on a guaranty agreement, a party must conclusively prove: (1) the existence and ownership of the guaranty contract, (2) the performance of the terms of the contract by plaintiff, (3) the occurrence of the condition on which liability is based, and (4) guarantor's failure or refusal to perform the promise." *Corona v. Pilgrim's Pride Corp.,* 245 S.W.3d 75, 80 (Tex.App.-Texarkana 2008, pet. denied). Hasty contends

that Keller is not entitled to summary judgment because it did not establish (1) ownership of the guaranty, and (2) that Hasty is liable for the specific types of payments due under the lease.

### A. Ownership of the Guaranty

■ Hasty argues, as he did below, that Keller cannot demonstrate ownership of the guaranty as a matter of law because the name of the landlord in the lease is different from the name of the landlord in the guaranty—i.e., Keller is the "Landlord" in the lease, and Keller GP is the "Landlord" in the guaranty. Hasty argues that "[t]his inconsistency is sufficient to raise a fact issue." In response, Keller argues that it has sufficiently demonstrated ownership as matter of law and describes the difference between the lease and the guaranty as a "typographical error ... of little moment." To support this argument, Keller cites to an unpublished opinion of our sister court, *Health United Family Care, Inc. v. GFIC Management, Inc.,* No. 01–98–01195–CV, 2001 WL 395004 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (not designated for publication). In *Health United,* individuals who leased office space from GFIC Management and executed a guaranty of lease argued that they were not liable to GFIC Management under the terms of the guaranty because it "identified the landlord as GFI, Ltd., instead of GFIC Management." *Id.* at *2. Our sister court interpreted the guaranty as a matter of law and concluded that holding the guarantors liable to GFIC Management under the guaranty "gives effect to the original intention of the parties." *Id.* As the court explained,

> [t]he guaranty at issue in this case was executed simultaneously with the lease agreement. The guarantors understood that they were guaranteeing the September 27, 1994 lease.... There is no evidence, nor is it [the guarantors'] con-

tention on appeal, that [they] intended the guaranty to cover any lease or indebtedness other than [the] September 27, 1994 lease for office space in the building managed by GFIC Management.

*Id.* at *2–3. We agree with our sister court's conclusion that a lease guaranty can be interpreted as a matter of law even when it does not state the correct name of the landlord.

This conclusion is also generally supported by Texas law. Under Texas law, we must construe the lease and the guaranty together because the guaranty states that "it is hereby made a part of that certain Lease." *See In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 320 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding) ("When one document is incorporated into another by reference, the two documents must be construed together."). Our primary concern is to ascertain the true intentions of the parties. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To determine the parties' intent, we review the entire agreement and supply the terms obviously intended. *Ussery Invs. v. Canon & Carpenter, Inc.,* 663 S.W.2d 591, 593 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd). And "[w]ritten contracts will be construed according to the intention of the parties, notwithstanding errors and omissions." *Am. 10–Minute Oil Change, Inc. v. Metro. Nat'l Bank–Farmers Branch,* 783 S.W.2d 598, 600 (Tex.App.-Dallas 1989, no writ). For example, in *Eldridge v. Poirier,* 50 S.W.2d 888 (Tex.Civ.App.-Dallas 1932, writ ref'd), this Court construed the language in a contract in which "the name of Eldridge was erroneously written for that of Mayfield at three places in the contract." We stated that the error was "obvious" and explained,

The doctrine is well established that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, when, by perusing the entire document, the errors can be corrected and omissions supplied, and, to this end, words, names, and phrases misused may be omitted entirely, and words, names, and phrases obviously intended may be supplied. We hold, therefore, that the appearance of the name of Eldridge instead of that of Mayfield at the three places in the contract resulted from errors; that by perusing the entire instrument the errors can, and should be, corrected by construction so as to effectuate the intention of the parties.

*Id.* at 891 (internal citations omitted).

Applying the *Eldridge* analysis to this case, we conclude that the reference to "Keller GP" as landlord instead of "Keller" is an error in the guaranty. There is no evidence, and Hasty does not contend, that the parties intended the guaranty to cover any lease or indebtedness other than the lease between the Pharmacy and Keller entered into the same day. Consequently, we conclude that Keller demonstrated ownership of the guaranty as a matter of law and that Hasty did not raise a fact issue on the element of ownership to defeat Keller's motion for summary judgment.

### B. Extent of Liability on Guaranty

Hasty also argues on appeal, as he did below, that the guaranty only obligated him to guarantee any unamortized portion of the tenant improvement allowance and the brokers' commission and that he is not liable for all amounts due under the lease. In other words, Hasty impliedly contends that he is not obligated to guarantee the Pharmacy's payment of any of the outstanding amounts under the lease enumerated in Matthews's summary-judgment affidavit, namely: (1) "unpaid rent in the total amount of $29,285.52," (2) "$5,288.71

in late fees," (3) "$8,328.54 in common area maintenance fees," and (4) "$2,000 for a security deposit."

The provision in the guaranty that Hasty relies on states as follows:

[Hasty], intending to be legally bound, does hereby guarantee to Landlord, its successor and assigns, the full and prompt performance by Tenant, its successors and assigns, the payment by Tenant of any unamortized portion of the Tenant Improvement Allowance ($60,000.00) and the Brokers' Commission ($7,878.65), which amounts shall be amortized over a six (6) year period, equal to approximately $11,313.11 annually (the "Unamortized Amounts"), in the event of default or other event which results in early termination of this Lease by either party.

Hasty contends that this provision is unambiguous and obligates him to guarantee only any unamortized portion of the tenant improvement allowance and the brokers' commission-two categories of the Pharmacy's obligation not included in Matthews's affidavit. Alternatively, he argues that if the provision is ambiguous, the ambiguity would create a fact issue sufficient to defeat summary judgment. In response, Keller agrees that the provision quoted above is unambiguous, but argues that the first part of that provision—the part that reads "Hasty ... does hereby guarantee ... the full and prompt performance by Tenant"—obligates Hasty to guarantee all of the Pharmacy's obligations under the lease, including payment of the outstanding amounts enumerated in Matthews's summary-judgment affidavit.[2]

The lease states that "[i]f there is a guarantor of [the Pharmacy's] obligation hereunder, then the obligations hereunder imposed upon [the Pharmacy] shall be the joint and several obligations of [the Pharmacy] and such guarantor, and the Landlord need not first proceed against [the Pharmacy] before proceeding against such guarantor nor shall any such guarantor be released from its guaranty for any reason whatsoever." Likewise, the guaranty states that Hasty is bound under the terms of the lease "with the same force and effect as if [Hasty] were designated in and had executed the Lease as 'Tenant' thereunder." The guaranty further states that "in any right of action which may accrue to Landlord under the Lease, Landlord may, at Landlord's option, proceed directly against [Hasty]." These provisions make it clear that Hasty is obligated to, among other things, guarantee the Pharmacy's payment of the amounts enumerated in Matthews's summary-judgment affidavit. After construing the lease and guaranty together to determine the intent of the parties' agreement, we conclude that the parties' agreement is unambiguous and obligates Hasty to guarantee all of the Pharmacy's performance under the lease. *See Enter. Leasing Co. v. Barrios,* 156 S.W.3d 547, 549 (Tex.2004) (an agreement is not ambiguous if it is "so worded that it can be given a certain or definite legal meaning or interpretation").

We conclude that Keller demonstrated Hasty's liability under the guaranty as a matter of law, and that Hasty did not raise

---

**2.** Alternatively, Keller argues that if the guaranty is ambiguous, any ambiguity was resolved by other undisputed evidence it submitted in support of its motion for summary judgment—namely the deemed admissions by Hasty (1) "that the Guaranty obligates Hasty to guarantee [the] Pharmacy's payment under and performance of the Lease" and (2) that Hasty "owed not less th[a]n $20,000 to Keller." Because we conclude that the guaranty is not ambiguous, we do not need to address whether this evidence conclusively resolved any ambiguity.

a genuine issue of material fact to defeat Keller's motion for summary judgment.

### CONCLUSION

We overrule Hasty's issue and affirm the trial court's judgment.