

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-14-00077-CV

_____

SAR WESTERN CENTER PLAZA, L.P., APPELLANT

V.

LE FRISBIE, LLC, JENNIFER FRISBIE, AND DIEP LE, APPELLEES

_____

On Appeal from the County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2010-080312-1, Honorable Don Pierson, Presiding

_____

May 26, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

The dispute before us apparently arose because someone did not sufficiently proofread documents they drafted. Nor does it seem that those who executed the documents took the time to read them carefully, if at all. The two documents about which we speak are a commercial lease and a guaranty. They were drafted on behalf of SAR Western Center Plaza, L.P. (Western). While LeFrisbie, LLC (LLC) signed the lease as tenant, Diep Le and Jennifer Frisbie signed the guaranty as guarantors. Needless to say, the tenant defaulted. That led Western to sue them. After a bench

trial, judgment was entered granting Western recovery against LLC but not Frisbie or Le. Western appealed via three issues. We need only address the second for it is dispositive. Under it, Western contends that the "trial court erred by ruling that the guaranty was not enforceable against Diep Le and Jennifer Frisbie because the guaranty was a part of the Lease that was amended by the parties." We sustain the point.

The issue is rather simple. Western sued as landlord of the commercial property encompassed by the lease. As landlord, it also sued upon the guaranty. The problem arises, though, because the first paragraph of the guaranty mentions that the landlord is "SAR Camp Wisdom Plaza, L.P." That is, it says:

> In order to induce **SAR Camp Wisdom Plaza***, L.P.. ("Landlord")* to execute the foregoing lease contract (the "Lease") with **LeFrisbie, LLC** . . . (Tenant), in Western Center Plaza . . . the undersigned . . . has guaranteed, and by this instrument . . . does hereby guarantee, the payment and performance of all liabilities, obligations and duties (including but not limited to payment of rent) imposed upon Tenant under the terms of the Lease as if the undersigned had executed the lease as Tenant thereunder.

(Emphasis added). That SAR Camp Wisdom Plaza, L.P., (Camp) was not the owner of the realty encompassed by the lease LLC executed is undisputed. Nor does anyone dispute that Western actually owned the property. Thus, question arises as to who is Camp. According to the record, it is a separate entity from Western but with a common general partner, Steven Keys.

Of further note is that Keys signed the "foregoing lease" mentioned in the guaranty. That is, on the signature page of the lease and at the line designated for the

2

"Landlord" appears the name "SAR Camp Wisdom Plaza, L.P." followed by the signature of Keys as "Its: Manager."

To further complicate the matter, we mention other provisions of the "foregoing lease." The first is the label or title given the document. It reads "STANDARD COMMERCIAL LEASE CONTRACT SAR WESTERN CENTER PLAZA, L.P. D/B/A WESTERN CENTER PLAZA . . . ." The second is the statement that "[t]his lease agreement is made and entered into between Landlord: SAR Western Center Plaza, L.P. . . . [h]ereinafter referred to as 'Landlord,' and LeFrisbie, LLC . . . [h]ereinafter referred to as 'Tenant.'" The third is the property address: "Western Center Plaza, 2901 Western Center . . . ."

So, what we have here is a lease transaction involving multiple documents which name two different entities as "landlord." Moreover, the entity named as "landlord" in the guaranty was not Western. Consequently, Le and Frisbie sought to avoid recovery by arguing that 1) Western could not enforce the guaranty since it was not a party to same and 2) "because Camp Wisdom, a different party and purported landlord, did not own the property" the lease was void, which circumstance rendered unenforceable the guaranty.[1] Apparently, the trial court agreed with one or both of the arguments.[2] Neither ground withstands scrutiny, though.

We first address the argument that the lease was void because Camp did not own the realty being leased. Le and Frisbie cite *Requa v. Joseph*, 225 S.W. 585 (Tex.

---

[1] Frisbie and Le do not dispute that they signed the lease. Nor do they dispute the extent of the obligation imposed if it was enforceable by Western.

[2] The record fails to reflect that anyone requested findings of fact or conclusions of law. Nor does it contain any such findings or conclusions. Thus, we do not know the actual ground or grounds upon which the trial court acted in holding the guaranty unenforceable.

Civ. App.—San Antonio 1920, no writ) to support their argument. In *Requa*, parties who previously owned a certain parcel of land sought to lease it to others after the sale. This led the court to state that the lease was void. *Id.* at 585. Assuming the holding in *Requa* is correct, we find it inapplicable. The landlord here did own the property it leased, per the rules of contract interpretation.

When interpreting contracts, our primary concern is to ascertain the true intent of the parties as expressed in the contract. *Clark v. Cotton Schmidt, L.L.P.*, 327 S.W.3d 765, 772-73 (Tex. App.—Fort Worth 2010, no pet.). This obligates us to examine and consider the entire contract, to harmonize and give effect to all provisions so that none are rendered meaningless, to presume that the parties intended every clause to have some effect, and to give the terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in some technical or different sense. *Id.* So too must we deem a specific contractual provision controlling over a general provision when the two arguably conflict. *Id.* at 733; *The City of Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App.—Fort Worth 2008, pet. dism'd). The latter situation appears here. As previously mentioned, the signature page contains the signature of Keys, as manager of Camp at the spot where the "landlord" was to sign. Arguably, this could be interpreted as a general allusion to Camp as being the landlord. However, elsewhere in the agreement we find a provision specifically identifying both the parties to the lease and the "landlord" and "tenant." The provision to which we refer is that stating: "[t]his lease agreement is made and entered into between Landlord: SAR Western Center Plaza, L.P. . . . [h]ereinafter referred to as 'Landlord,' and LeFrisbie, LLC . . . [h]ereinafter referred to as 'Tenant.'" That the

4

provision's purpose serves to expressly identify the parties to the agreement is beyond reasonable dispute. And given its specificity, it controls over any arguable conflict caused by Camp signing the lease in the space marked for the landlord.

Finally, no one disputes that Western owned the property. So, the property owner and landlord here are one and the same, unlike the situation in *Requa*. Simply put, the guarantee is not unenforceable since the obligation Le and Frisbie guaranteed is not void under *Requa*.

Next, we address the allegation that the guaranty was unenforceable because Western was not a party to it. Admittedly, Western's name was not included in the guaranty. Yet, the record clearly indicates that Western, Le, Frisbie, and LLC were contemplating the lease of only one parcel of property. Furthermore, the guaranty was executed the same day as the lease (if not the same time) and provided to induce the landlord to execute that lease. By it utilizing the term "foregoing lease" and being attached to the Western/LLC lease as Exhibit A, the only reasonable conclusion one can draw is that the "foregoing lease" was the agreement expressly designating Western and LLC as landlord and tenant, respectively. To that, we add the promise by Le and Frisbie (made through the guaranty) that they would pay and perform all liabilities, obligations, and duties imposed upon the tenant by the lease as if they "had executed the lease as Tenant." These indicia lead us to conclude that the two agreements were part and parcel of the same transaction. Being part and parcel of the same transaction, we construe them together, unless otherwise provided. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). Additionally, the terms of the lease became part of the guaranty given that the

5

guarantors expressly assumed the duty to perform all those terms. *See id.* (wherein the Supreme Court held that a jury waiver appearing in a lease was incorporated into the guaranty because the guarantor agreed to perform and fulfill all of the lease terms and conditions, the guaranty referred to the lease, and the two documents were executed contemporaneously with the same purpose and as part of the same transaction). Western being the true landlord as expressed in the lease and Le and Frisbie having agreed to perform all the tenant's obligations imposed by that lease, Western was, as a matter of law, entitled to enforce the lease obligations against Le and Frisbie via the guaranty.

In other words, the parties intended that the lease be between Western and LLC and that Le and Frisbie were to guarantee performance of that lease. It may be that Camp's name was interjected into both the lease and guaranty, but that does not prohibit a court from construing the documents to effectuate the parties' true intent. And, in construing the agreement to effectuate that intent, we may "supply the terms obviously intended." *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.3d 666, 670 (Tex. App.—Dallas 2008, no pet.) (involving the enforcement of a guaranty agreement when the name of the landlord in the guaranty differed from that in the lease). Indeed, documents are to be construed according to the intent of the parties "'notwithstanding errors and omissions.'" *Id., quoting Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank-Farmers Branch*, 783 S.W.2d 598 (Tex. App.—Dallas 1989, no writ). To effectuate that intent and comply with this rule of construction, a court may correct errors, remove misused names, and incorporate correct names. *Id. quoting Eldridge v. Poirier*, 50 S.W.2d 888 (Tex. Civ. App.—Dallas 1932, writ ref'd). That is what was done

in *Hasty* when the lease and guaranty clearly evinced an intent the landlord was an entity different than that mentioned in the guaranty. That is what we do here.[3] In effectuating the intent of the parties by construing the lease and guaranty together, we conclude, as a matter of law, that Western, not Camp, is the landlord to which the obligations under the lease and guaranty are owed.[4]

Accordingly, the portion of the judgment denying recovery against Diep Le and Jennifer Frisbie is reversed. The judgment is modified to reflect that SAR Western Center Plaza, L.P. have and recover against Diep Le, Jennifer Frisbie, and LeFrisbie, LLC, jointly and severally, all damages and sums previously awarded SAR Western Center Plaza, L.P. solely against LeFrisbie, LLC. In all other things, the judgment is affirmed, as modified.


Brian Quinn
Chief Justice

---

[3] Because the interpretation of a guaranty involves questions of law, we are not bound by how the trial court may have construed the agreements. *Moayedi v. Interstate 35/Chisum Road, L.P.*, 438 S.W.3d 1, 7 (Tex. 2014); *Jamshed v. McLane Express, Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.).

[4] To the extent it is suggested that the guaranty did not survive amendment of the lease, we note that the guaranty provides otherwise. The guarantors agreed to remain "fully liable for the payment and performance of all liabilities, obligations and duties of Tenant under the lease as so . . . amended . . . or otherwise modified."