

# NUMBER 13-24-00128-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PALMER ENTERPRISES, INC.,                                                 **Appellant,**

**v.**

KAPLAN HIGHER
EDUCATION, LLC, F/K/A
KAPLAN HIGHER EDUCATION
CORPORATION,                                              **Appellee.**

## ON APPEAL FROM THE 476TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, West, and Cron**
**Memorandum Opinion by Justice Cron**

This dispute concerns the terms of a guarantee executed by appellee Kaplan Higher Education, LLC, f/k/a Kaplan Higher Education Corporation in favor of appellant Palmer Enterprises, Inc. concerning a commercial lease between Palmer, as landlord,

and Kaplan's former subsidiary, SACMD Acquisition Corporation, as tenant.[1] In a single issue, Palmer argues the trial court erred in granting summary judgment in Kaplan's favor on Palmer's breach of guaranty claim. We affirm.

## I. BACKGROUND

### A. The Timeline and Instruments

It is undisputed that Palmer leased commercial property located at 1400 East Oakland Avenue, in McAllen, Texas (Subject Property) to SACMD by way of a lease agreement signed by Palmer and SACMD on April 3, 2003, for a ten-year term (collectively, the Lease Agreement). Kaplan is listed as guarantor in section 1.15 of the Lease Agreement. Section 12.06 states:

> INCORPORATION OF PRIOR AGREEMENT; MODIFICATIONS: This Lease is the only agreement between the parties pertaining to the Lease of the Premises and no other agreements are effective. All amendments to the Lease shall be in writing and signed by all parties. Any other attempted amendment shall be void.

Kaplan, as a guarantor, signed an exhibit to the Lease Agreement, "Exhibit G," titled "GUARANTY ATTACHED TO AND FORMING PART OF A LEASE DATED AS OF JANUARY . . . , 2003 BY AND BETWEEN PALMER . . . AS LANDLORD, AND SACMD . . . , AS TENANT" (the Guaranty). In relevant part, it stated,

> In consideration of the simultaneously letting, at the request of the undersigned (hereinafter "Guarantor") of the premises described in the within Lease to the above Tenant, the Guarantor does hereby guarantee to Landlord the full payment of all Base Rent and Additional Rent, and also that the obligation of the Guarantor hereunder shall in no wise be terminated or otherwise affected or impaired by reason of any assertion by Landlord against Tenant of any of the rights or remedies available to Landlord pursuant to said Lease or allowed at law or in equity.

---

[1] SACMD is not a party to this appeal.

. . . .

The Guarantor further covenants and agrees that this Guaranty shall remain and continue in full force and effect as to any renewal, modification, or extension of the within Lease and, as except as otherwise provided herein, as to any assignment or subletting (after applicable prior written notice to the Guarantor of any of the aforesaid transactions) and during any period when Tenant, its assignees or sublessees are occupying the Demised Premises, subject to the terms, covenants and conditions of the aforementioned Lease.

All terms contained herein that are defined in said Lease shall retain their definition as provided for in said Lease.

. . . .

This Guaranty shall be binding upon the Guarantor and shall inure to the benefit of the Landlord, and their respective heirs, distributees, executors, administrators, successors and assigns.

Approximately five years later, on September 12, 2008, Palmer, as landlord, SACMD, as tenant, and Kaplan, as guarantor, signed a "First Amendment to Lease Agreement" ("First Amendment"). Under the First Amendment, the lease term was extended until October 7, 2018, and it further provided, among other provisions, that,

28. Except as specifically amended by this Amendment, the Lease remains in full force and effect. In the event of any conflict between the provisions of the Lease and this Amendment, the provisions of the Amendment shall be controlling.

29. Guarantor joins herein for the purpose of extending its Guaranty to include this Amendment.

Prior to the new end date, in early 2015, SACMD notified Palmer that "Kaplan, Inc. . . . , Kaplan Higher Education, LLC . . . and certain subsidiaries of [Kaplan Higher Education, LLC] have agreed to sell to Education Corporation of America . . . substantially all of the assets of the business conducted at 38 Kaplan College Campuses[.]" It also notified Palmer, that in accordance with the transaction, "the Lease will be transferred to

3

[Education Corporation of America's] main operating company and wholly-owned subsidiary, Virginia College, LLC . . . ." SACMD also requested that Palmer, among other things, sign a release of the Guaranty. The notification also included a press release that indicated that as part of the transaction, Education Corporation of America agreed to "give Kaplan a preferred equity interest" in the entity.[2] Palmer declined SACMD's request to release the Guaranty.

On July 31, 2018, a "Second Amendment to Lease Agreement" (Second Amendment) was signed by Palmer, as landlord, and Virginia College,[3] as tenant. Although not signed as such, the introduction paragraph referred to Virginia College as "VIRGINIA COLLEGE LLC, d/b/a Brightwood College, an Alabama limited liability company, as successor in interest to SACMD Acquisition Corporation ("Tenant")." The lease term was extended to October 31, 2028.

Less than six months later, Virgina College purportedly failed to pay Palmer rent for the month of November 2018, or any month thereafter. Subsequently, Palmer sued Kaplan, among others.

B.    The Summary Judgment Record

In its live pleading, filed on June 2, 2020, Palmer sued Kaplan for "breach of contract in connection with its breach of the Guaranty." On August 26, 2020, Kaplan filed a combined no-evidence and traditional motion for summary judgment on multiple

---

[2] We note that this information was pulled from exhibits attached to the declaration of Charles C. Murray and affidavit of Gamble J. Palmer Jr., which are both part of the summary judgment record noted herein. However, to more easily follow the timeline of events, we refer to this evidence here.

[3] Virginia College is not a party to this appeal.

4

grounds. As to its no-evidence grounds, Kaplan argued, in relevant part,[4] that to the extent Palmer argued the Second Amendment was a modification, Palmer could not prove that Kaplan had notice of the change and accepted it. As to its traditional motion for summary judgment, Kaplan argued that the Second Amendment did not fall within the scope of the Guaranty's terms because it "was not signed by all parties" (those purportedly being Palmer, SACMD, and Kaplan) in accordance with section 12.06 of the Lease Agreement. Kaplan argued that although it "agreed to guarantee renewals, modifications, and extensions[,]" such as the First Amendment, that "was a modification or extension authorized by the terms of the Lease — it was in writing and signed by all parties — and, therefore, within the scope of the Guaranty."[5]

As summary judgment evidence, Kaplan relied on: (1) the affidavit of Gamble J. Palmer Jr.,[6] along with its attachments, the Lease Agreement, the First Amendment, and the Second Amendment;[7] (2) the declaration of Charles C. Murray, Kaplan's counsel of

---

[4] Kaplan also argued that "[e]ven if the Guaranty applies to the [Second Amendment], which it does not, there is no evidence that Palmer performed its obligations under the terms of the [Second Amendment]; [t]here is no evidence that the [t]enant failed to pay rent under the Lease Kaplan guaranteed; and [t]here is no evidence that Kaplan failed or refused to perform an obligation that it promised to perform in the Guaranty." As demonstrated in this memorandum opinion, we do not need to reach this point. TEX. R. APP. P. 47.1.

[5] Kaplan also moved for a traditional summary judgment motion based on the defense of material alteration and defense of waiver. However, given our disposition described herein, we do not reach these arguments. *See* TEX. R. APP. P. 47.1.

[6] On appeal, Kaplan challenges a statement in Gamble's affidavit as conclusory when addressing its no-evidence grounds but even if we agreed with Kaplan on this point, it would not change the disposition of this appeal. Thus, we do not address it. TEX. R. APP. P. 47.1.

[7] We note that Kaplan incorporated by reference the summary judgment evidence it relied on in its combined motion, as they had already been filed in the underlying trial court case. *See Galindo v. Snoddy*, 415 S.W.3d 905, 913–14 (Tex. App.—Texarkana 2013, no pet.) ("While the better practice is to attach all summary judgment evidence to the motion for summary judgment or the response thereto, Rule 166a does not require the evidence to be attached and merely requires the evidence to be 'on file.'" (citations omitted)).

record, together with its attached exhibits; and (3) the declaration of Jeffrey Elie,[8] Vice President, Global Real Estate and Facilities for Kaplan, Inc., together with its attached exhibits.[9]

On November 12, 2020, Palmer filed a response to Kaplan's summary judgment motion. As to the no-evidence grounds, Palmer argued that the Guaranty's terms dictate whether Kaplan is obligated under the Second Amendment, and thus, it is irrelevant that Kaplan is not a signatory. Palmer further argued that Virgina College is a "Tenant" as defined in section 12.02 of the Lease Agreement because Virginia College is SACMD's successor. Kaplan, it contended, cannot deny that the Guaranty applies to the First Amendment since it "executed [it] as 'Guarantor[,]'" and the Second Amendment is simply an extension of the First Amendment. Moreover, according to Palmer, the Guaranty expressly states that it "shall remain and continue in full force and effect as to any . . . extension of the Lease." The Second Amendment also expressly represents itself as an extension of the Lease Agreement. Palmer argued that "all [three instruments are] related, and contractually connected."

As to the traditional grounds, Palmer faulted Kaplan's reliance on section 12.06 of the Lease Agreement, contending that the only parties to the Lease Agreement were Palmer and SACMD, not Kaplan. Additionally, it argued that the fact that Kaplan was

---

[8] We observe in the clerk's record a "Second Declaration of Jeffrey Elie" executed on November 13, 2023, in which he declares among other things that "I understand this Declaration will be used in support of Defendant SACMD Acquisition Corporation's No-Evidence and Traditional Motions for Summary Judgment[.]" We do not observe such a motion in the record before us. However, regardless, our disposition focuses on the instruments discussed in this memorandum opinion.

[9] Because our analysis turns on the language used in the instruments, we do not detail the substance of the declarations and their corresponding exhibits as it is unnecessary. *See* TEX. R. APP. P. 47.1.

"invited" to sign the First Amendment does not prove that it was "required" to sign it or the Second Amendment. Instead, the Guaranty makes clear that Kaplan's signature is unnecessary, and the Second Amendment is "clearly" a renewal, modification, or extension of the Lease Agreement within its scope.

As evidence in support of its response, it too attached Gamble's[10] affidavit, together with the same exhibits.[11] It also relied on all other summary judgment evidence referenced in Kaplan's summary judgment motion, all judicial admissions within Kaplan's said motion, and Kaplan's response to Palmer's partial motion for summary judgment.

On November 19, 2020, Kaplan replied in pertinent part that Palmer failed to cite any evidence that Kaplan was "invited" to sign the First Amendment or case law that such an invitation precluded Kaplan from becoming a party to it. It pointed out that paragraph 29 of the First Amendment states, "Guarantor joins herein for purposes of extending its Guaranty to include this Amendment[,]" and it signed immediately below the following language, "IN WITNESS WHEREOF, the parties executed this Amendment as of the date first set forth above." It reiterated that the Second Amendment fell outside the scope of the Guaranty.

C.     The Ruling

On October 31, 2023,[12] the trial court signed a written order, which specified its ruling as follows:

---

[10] We use his given name for clarity.

[11] Those being, the Lease Agreement, the First Amendment, and the Second Amendment.

[12] In its briefing, Palmer represented to us that a hearing was held on October 26, 2023, on the parties' cross motions for summary judgment, but we have not been provided with a reporter's record from that hearing.

7

NOW before the Court are Plaintiff's Motion for Summary Judgment Against Defendant Kaplan Higher Education Corporation and Defendant Kaplan Higher Education Corporation's No-Evidence and Traditional Motion for Summary Judgment. Having considered the Motions, and all responses, replies, and the arguments by counsel, it is the opinion of the Court that Plaintiff's Motion should be DENIED and that Defendant's Motion should be GRANTED. The Court's opinion is based *in part* on the following analysis:

1.    Plaintiff alleges Defendant Virgina College, LLC (hereinafter, "Virigina College") breached its lease agreement and seeks to enforce a guaranty agreement executed by Defendant Kaplan Higher Education Corporation (hereinafter "Kaplan"). Kaplan argues that the guaranty agreement does not apply to the "Second Amendment to Lease Agreement" executed by Plaintiff and Virigina College, LLC on July 31, 2018.

2.    Plaintiff and SACMD Acquisition Corporation (hereinafter "SACMD") executed a Lease Agreement on April 3, 2003, and Kaplan executed a Guaranty Agreement in connection with said Lease Agreement. The Guaranty Agreement states in pertinent part that it is enforceable "subject to the terms, covenants, and conditions of the aforementioned Lease." Plaintiff's Ex. 2 at p.67. The Lease Agreement of April 3, 2003 was incorporated wholly into the Guaranty Agreement by reference of all its terms in the Guaranty Agreement. On September 12, 2008, the parties executed a "First Amendment to Lease Agreement."

      . . . .

4.    Furthermore, Plaintiff, SACMD, *and* Kaplan executed the First Amendment to the Lease Agreement. The Amendment, by all the parties' signatures, recognizes Kaplan, the guarantor, as a party to the First Amendment. *See* Plaintiff's Ex. 3 at p.13. Although guarantors, by law, are not typically parties to the underlying contract, the First Amendment explicitly recognizes the guarantor in this case as such. Therefore, as a party, Kaplan was a necessary signatory to any subsequent amendments pursuant to [section] 12.06 of the Lease Agreement. Plaintiff's Ex. 2 at p.37. This condition was not met in the execution of the Second Amendment, *see* Plaintiff's Ex. 4, at p.6, and therefore, the Guaranty Agreement cannot apply to the Second Amendment.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Summary Judgment be, and hereby is, DENIED, and

that Defendant's No-Evidence and Traditional Motion for Summary Judgment be, and hereby is, GRANTED. Accordingly, it is ORDERED that Plaintiff recover naught against Defendant Kaplan Higher Education Corporation and that all costs be taxed against Plaintiff.

On December 15, 2023, Kaplan filed a motion to clarify and sever in which it requested the trial court to clarify that its summary judgment was entered in favor of "Kaplan Higher Education, LLC f/k/a Kaplan Higher Education Corporation" as Palmer identified it in its live pleading, and to sever Palmer's claims against it. On January 23, 2024, the trial court granted Kaplan's motion in both respects. *See* TEX. R. CIV. P. 41. This appeal ensued.

## II.    STANDARD OF REVIEW

"The summary judgment standards of review are well-known." *Nwokenkwo v. JP Morgan Chase Bank, N.A.*, No. 14-22-00001-CV, 2023 WL 3115697, at *4 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, pet. denied). We review a trial court's summary judgment de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022). Where, as here, the trial court's summary judgment order specifies a ground on which it was granted, we generally limit our review to that ground. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993); *Sundial Owner's Ass'n, Inc. v. Nueces County*, No. 13-21-00069-CV, 2023 WL 2414898, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, pet. denied.) (mem. op.). "When both traditional and no-evidence motions for summary judgment are filed, the reviewing court must uphold the summary judgment if it can be sustained under either method." *Shawnee, Inc. v. Kaz Meyers Props., LLC*, No. 05-23-00507-CV, 2025 WL 1909391, at *11 (Tex. App.—Dallas July 10, 2025, no pet.) (mem. op.) (citation omitted).

9

"To defeat a no evidence motion for summary judgment, the non-movant 'must produce summary judgment evidence raising a genuine issue of material fact' on the challenged element of its claim or defense." *Saenz v. HEB Grocery Co.*, L.P., No. 13-13-00696-CV, 2014 WL 4049822, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 14, 2014, no pet.) (mem. op.) (citing *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004)); *see* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgeway*, 135 S.W.3d at 600.

The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). That is, a movant must conclusively negate at least one essential element of each of the plaintiff's causes of action or, alternatively, must conclusively establish each element of an affirmative defense. *Ward v. Malone*, No. 13-06-108-CV, 2007 WL 4260516, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 6, 2007, pet. denied) (mem. op.) (citation omitted). If the movant carries this burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence." *Poppingfun, Inc. v. Integracion de Marcas, S.A. de C.V.*, No. 13-19-00143-CV, 2021 WL 317648, at *2 (Tex. App.—Corpus Christi–Edinburg, Jan. 28, 2021, no pet.) (mem. op.) (citation omitted). We must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the

10

motion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

### III. APPLICABLE LAW

"A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform." *Bank of Am., N.A. v. Lilly*, No. 07-11-00154-CV, 2012 WL 3100905, at *2 (Tex. App.—Amarillo July 31, 2012, no pet.) (mem. op.) (citation omitted). A guaranty may be continuing or specific. *Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 192 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "A continuing guaranty contemplates a future course of dealing between the lender and debtor, and the guaranty applies to other liabilities as they accrue." *Id.* (citation omitted). "A specific guaranty applies only to the liability specified in the guaranty contract." *Id.* (citation omitted).

As Palmer alleges breach of contract together with breach of guaranty in its live pleading and because we observe that some of our sister courts have analyzed the elements of breach of contract and breach of guaranty together, we list the elements for each. *See, e.g.*, *Nwokenkwo*, 2023 WL 3115697, at *10; *Leach v. Triple-S Tube Supply, LP*, No. 01-19-00773-CV, 2021 WL 2931348, at *4–5 (Tex. App. Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.). The elements for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Poppingfun, Inc.*, 2021 WL 317648, at *3 (citation omitted). To be a valid, enforceable contract, there must be a meeting of the minds with respect to its subject matter and essential terms. *See Tamasy v. Lone Star Coll. Sys.*, 635 S.W.3d 702, 708–09 (Tex. App.—Houston [14th Dist.] 2021, no pet.). For breach of guaranty, a party must show proof of: (1) the existence

11

and ownership of a guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform by the guarantor. *Nwokenkwo*, 2023 WL 3115697, at *10. "The interpretation of a guaranty agreement, like any contract, is a legal question we review de novo." *BBVA USA v. Francis*, 642 S.W.3d 932, 936 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

## IV.    DISCUSSION

As the initial question we must answer, when considering either Kaplan's no-evidence or traditional motion for summary judgment and Palmer's arguments thereto, detailed above and that remain unchanged on appeal, is the same and turns on interpretation, our below analysis of that question is done together. That question being, what is the scope of the Guaranty?

### A.    Analysis

#### 1.    The Guaranty

"It is well settled in Texas that a guarantor may rely and insist upon the terms and conditions of the guaranty being strictly followed, and if the creditor and principal debtor vary in any material degree from the terms of their contract, then a new contract has been formed and the guarantor is not bound to it." *Vastine v. Bank of Dall.*, 808 S.W.2d 463, 464 (Tex. 1991) (per curiam); *see Ken Petroleum Corp. v. Questor Drilling Corp.*, No. 13-97-014-CV, 2000 WL 35729215, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2000, no pet.) (op. on remand) ("Contracts of guaranty are construed in favor of the grantor, and may not be extended beyond their precise terms." (citations omitted)).

12

Here, the Guaranty, an exhibit to the Lease Agreement "ATTACHED TO AND FORMING PART OF" it, provided in relevant part that:

> The Guarantor further covenants and agrees that this Guaranty shall remain and continue in full force and effect as to any renewal, modification, or extension of the within Lease and, as except as otherwise provided herein, as to any assignment or subletting (after applicable prior written notice to the Guarantor of any of the aforesaid transactions) and during any period when Tenant, its assignees or sublessees are occupying the Demised Premises, *subject to the terms, covenants and conditions of the aforementioned Lease.*

(Emphasis added).

Palmer's construction would have us carve out the clause, "subject to the terms, covenants, and conditions of aforementioned lease" from applying to "any renewal, modification, or extension of the within Lease." But to do so would undoubtedly expand Kaplan's rent obligations because Kaplan would then be bound in perpetuity and without limitation as to any "renewal, modification, or extension" Palmer chose regardless of Kaplan's knowledge or consent. *Norris v. Tex. Dev. Co.*, 547 S.W.3d 656, 662–63 (Tex. App.—Houston [14th Dist.] 2018) ("A court must construe a guaranty strictly according to its precise terms and not extend by construction the guarantor's obligation." (citation omitted)); *Bank of Am., N.A.*, 2012 WL 3100905, at *2 ("This [strict construction] rule prohibits the extension, by construction or implication, of the guarantor's obligations beyond the precise terms of her agreement."); *see Sonne v. F.D.I.C.*, 881 S.W.2d 789, 792 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("Consent is determined on an individual basis according to the particular language of the guaranty, and courts have held guarantors to the terms of their consent as stated in a guaranty."). Stated another way, even if the Guaranty is of a continuing nature, the specific paragraph in which future

dealings are contemplated includes limiting language impacting the Guaranty. *Cf. Hercules Expl., Inc. v. Halliburton Co.*, 658 S.W.2d 716, 724 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.) ("None of the limitations affect the provisions of the [continuing] 'Letter of Guaranty.'")

As such, we strictly construe any "renewal[s], modification[s], or extension[s]" in favor of Kaplan in that they must be "subject to the terms, covenants and conditions of" the Lease Agreement. In other words, we construe the Guaranty with the Lease Agreement. *See O'Banion v. Inland W. Clear Lake Gulf Shores GP, LLC*, No. 01-15-00704-CV, 2017 WL 5494695, at *6 (Tex. App.—Houston [1st Dist.] Nov. 16, 2017, no pet.) ("Because the Lease and Guaranty were executed contemporaneously and the Guaranty is incorporated into the Lease, we construe them together."); *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.3d 666, 670 (Tex. App.—Dallas 2008, no pet.) ("Under Texas law, we must construe the lease and the guaranty together because the guaranty states that 'it is hereby made a part of that certain Lease.'" (citation omitted)); *Centerpoint Apartments v. Webb*, No. 2-07-278-CV, 2008 WL 4052929, at *3 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) ("[W]hile title alone may not be dispositive, we may consider it in interpreting the parties' intentions." (citations omitted)). In doing so, we arrive at section 12.06 of the Lease Agreement. It provides that:

> This Lease is the only agreement between the parties pertaining to the Lease of the Premises and no other agreements are effective. All amendments to the Lease shall be in writing and signed by all *parties*. Any other attempted amendment shall be void.[13]

(Emphasis added).

---

[13] We observe a synonym of amendment is modification. Merriam-Webster, https://www.merriam-webster.com/dictionary/amendment#synonyms (last visited Feb. 19, 2026).

14

Accordingly, the question becomes whether Kaplan, as guarantor, fell within the term "parties" under section 12.06, left unchanged by the First Amendment, because if it did, then the Second Amendment falls outside the Guaranty's scope for failing to comply with "the terms, covenants and conditions" of the Lease Agreement.

## 2.    "Parties"

The primary objective in construing contracts is to give effect to the written expression of the parties' intent, *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019), as expressed by the plain language they use. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Tamasy*, 635 S.W.3d at 709. If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Neither the Lease Agreement nor the First Amendment define the term "parties" or includes a provision titled, "Parties." *Cf. Lesieur v. Fryar*, 325 S.W.3d 242, 252 (Tex. App.—San Antonio 2010, pet. denied) (interpreting, "1. PARTIES: *Timothy Fryar and Sandra Fryar* (Seller) agrees to sell and convey to GEORGE LESIEUR AND DIANA LESIEUR (Buyer) and Buyer agrees to buy from Seller the Property described below[,]" as defining the parties under the contract). Nevertheless, here, the signatories' intent that the term "parties" included Kaplan is shown by observing that Kaplan's signature on the First Amendment follows language (i.e., "IN WITNESS WHEREOF, the parties have

15

executed this Amendment as of the date first set forth above.") that specifically refers to the signatories as "parties." *See Great Am. Ins. Co.*, 512 S.W.3d at 893 ("'Plain meaning' is a watchword for contract interpretation because word choice evinces intent.").

Additionally, the location of Kaplan's signature relative to the undisputed "parties" (i.e., Palmer and SACMD) signatures shows the signatories' intent that Kaplan was a party. That being, Kaplan's signature was affixed on the same page as theirs. *Cf. Lesieur*, 325 S.W.3d at 252 (holding that seller's broker was not entitled to rely on or enforce the attorney's fees provision in the underlying real estate transaction since it did not establish it was a party to it after reasoning, in relevant part, that the "[Seller's Broker] did not sign the page where the buyer and the seller signed, nor did she initial any specific provision or page in the contract; rather, [she] . . . signed only that provision regarding the ratification of the broker's fee, thereby obligating her to pay [the buyer's] broker three percent of the total sales price at closing"). Additionally, the parties' intent that Kaplan fell within the term "parties" in section 12.06 ("All amendments to the Lease shall be in writing and signed by all parties.") is demonstrated by its signature to an instrument titled "First *Amendment* to Lease Agreement" coupled with its stated purpose in that amendment of joining for the purpose of "extending its Guaranty to include this *Amendment*." (Emphasis added).

Contrary to Palmer's position that Kaplan was simply "invited" to sign, the plain language mandates that Kaplan had to sign any amendment for it to come within the purview of the Guaranty. *See Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 888 ("As we have often said, in one way or another, "[a] contract's plain language controls, not what one side or the other alleges they intended to say but did not." (citations omitted)). And Palmer

16

has not put forth any evidence otherwise showing that Kaplan was simply "invited to" sign the First Amendment. Accordingly, as there is no dispute that Kaplan did not sign the Second Amendment, it never came within the scope of the Guaranty's terms.

**B.      Summary**

We concur with the trial court's legal conclusion that the "Guaranty" did not "apply to the Second Amendment" because "Kaplan was a necessary signatory to any subsequent amendment pursuant to" section "12.06 of the Lease Agreement." Thus, we overrule Palmer's sole issue.

**V.      CONCLUSION**

We affirm the trial court's judgment.

JENNY CRON
Justice

Delivered and filed on the
24th day of February, 2026.

17
